UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - x

PEARSON EDUCATION, INC.,
JOHN WILEY & SONS, INC.,
CENGAGE LEARNING INC. AND
THE MCGRAW-HILL COMPANIES, INC.,

                Plaintiffs,

    -against-                     07 Civ. 7890 (PKC)

THE TEXTBOOK GUY LLC
D/B/A THETEXTBOOKGUY.COM,
MATTHEW STIRLING AND
JOHN DOES NOS. 1-5,

                Defendants.

- - - - - - - - - - - - - - - - - x

        DECLARATION OF WILLIAM DUNNEGAN IN SUPPORT
        OF PLAINTIFFS' MOTION TO ENFORCE THE FINAL
        JUDGMENT AND PERMANENT INJUNCTION ENTERED
          MARCH 5, 2008 AND TO ADJUDGE DEFENDANT
             THE TEXTBOOK GUY LLC IN CONTEMPT

      WILLIAM DUNNEGAN hereby declares pursuant to 28 U.S.C. § 1746 that the following is true and correct:

      1.   I am a member of the bar of this Court and the firm of Dunnegan LLC, attorneys for plaintiffs in this action. I am making this declaration in support of plaintiffs' motion for an order adjudging defendant The Textbook Guy LLC ("TTG") in contempt of the final judgment and permanent injunction by consent entered in this action on March 5, 2008 ("Final Judgment"), and further compelling TTG to pay to plaintiffs forthwith all amounts due under the Final Judgment, with interest and attorneys' fees.

## The First Contempt Motion

2.   The second decretal paragraph (on page 3) of the Final Judgment, a copy of which without its schedules is annexed as Exhibit A, compelled defendants, including TTG, to make a series of payments totaling $76,000.  Defendants made the first payment of $25,000 on March 1, 2008.  However, defendants, including TTG, failed to make the second payment of $15,000 due April 1, 2008.

3.   On or about April 2, 2008, I called the attorney for defendants and left a message.  By e-mail dated April 2, 2008, the attorney for defendants told me that defendant Matthew Stirling ("Stirling") was "quite sick."  I understand that Stirling is the sole owner of TTG.

4.   On April 2, 2008, I sent a letter by Express Mail to both defendants and their attorney, Christ Gaetanos, Esq.  This letter provided:

> "In accordance with the final judgment and permanent injunction by consent in the above action, we are writing to advise you that you are in default in making the $15,000 payment due on April 1, 2008.
>
> "Unless payment is received within 10 business days of the date of this letter, plaintiffs will exercise their rights under this final judgment, including the right to accelerate all amounts due."

5.   On or about April 14, 2008, I called again and spoke with the attorney for defendants.  I thereafter received an

e-mail dated April 15, 2008, in which he advised me that Stirling was having "trouble with funds."

6.  By letter dated April 16, 2008, a copy of which is annexed as Exhibit B, plaintiffs declared a default and exercised their right to accelerate all amounts due under the Final Judgment.

7.  Plaintiffs then obtained on April 18, 2008, an order to show cause from this Court why an order should not be entered enforcing the Final Judgment and adjudging Stirling in contempt.

8.  On April 25, 2008, the Friday before the return date on this Court's order to show cause, Stirling filed for bankruptcy in the United States Bankruptcy Court for the District of Arizona. In the Bankruptcy Court, Stirling filed on May 23, 2008 a change of address, indicating that he now resides at 200 Rosencrans Ave., Apt. A, Manhattan Beach, California 90266.

### TTG's Receipt Of Funds From Hartford

9.  During the course of the litigation, defendants disclosed the existence of an insurance policy of TTG with The Hartford Insurance Company ("Hartford").

10. By e-mail dated May 6, 2008, a copy of which is annexed as Exhibit C, defendants' attorney advised of a potential "settlement" with Hartford in which plaintiffs could receive $33,000 if they released all claims against defendants.

Defendant's attorney repeated this offer in an e-mail dated May 23, 2008, a copy of which is annexed as Exhibit D.

11. By letter dated May 28, 2008, a copy of which is annexed as Exhibit E, I wrote to Hartford asserting a claim on behalf of plaintiffs against it pursuant to Section 3420 of the New York State Insurance Law.

12. On the morning of June 3, 2008, Christ Gaetanos, the attorney for defendants, called me. He urged me to persuade plaintiffs to accept the $33,000 offered and to release defendants under the Final Judgment. He threatened that, if plaintiffs did not accept this offer, the $25,000 already paid would be reclaimed in the Bankruptcy Court as a "preference." I told Mr. Gaetanos that plaintiffs had chosen to assert a claim directly against Hartford.

13. Hartford responded to me by letter dated May 30, 2008, a copy of which is annexed as Exhibit F, which I received on the afternoon of June 3, 2008.

14. After receiving Hartford's letter on June 3, 2008, I called the representative of Hartford who had written it. She advised me that Hartford had sent, under cover letter, a check for $38,000 payable to TTG and its attorneys and another check payable only to its attorneys for $35,000 to "defend" this action. At my request, she faxed a copy of the cover letter to me, which is

4

annexed as Exhibit G.  Hartford's cover letter to the attorneys for defendants provides in part:

> "<u>The second check made payable in the amount of $38,000 reflects The Hartford's agreement to pay one half of the amount of the judgment entered against our insured.</u>  It is our understanding of the settlement agreement between Hartford and its insured that amounts paid in excess of the underlying defense costs must be used by the insured to satisfy its obligations pursuant to the judgment entered against it in the United States District Court, Southern District of New York.  <u>It is our expectation that the insured will use the funds accordingly.</u>  If this is not your understanding, then you are not authorized to negotiate our check in the sum of $38,000 and must return that check to my attention immediately."  (Emphasis added.)

15.  Later on the afternoon of June 3, 2007, I spoke by telephone with a different attorney for TTG, Richard Galbo, Esq., who has not appeared in this action.  During our conversation, I requested that he endorse the $38,000 check to "Pearson Education" and send it to me.  He said that he would not do that, at least until he was paid a fee for negotiating with Hartford.  I assumed that he also required a release of defendants under the Final Judgment, although he did not expressly state that.

16.  Upon information and belief, TTG and its attorney still have a check for $38,000, or the proceeds of it, available to pay the Final Judgment.  But they refuse to do so unless plaintiffs release their claims against defendants under the Final judgment and pay $5,000 to the attorney for TPG who negotiated with Hartford.

5

17. Plaintiffs are proceeding by order to show cause rather than notice of motion because of the need for relief prior to the time that the motion would be heard under an ordinary motion schedule. The longer the delay in hearing the motion, the greater chance that TTG will dissipate or secrete its assets, specifically the proceeds of the $38,000 check, and render itself unable to comply with the Final Judgment.

18. Other than the first application for contempt described above, plaintiffs have not made a similar application for relief in this or any other court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 4, 2008.

                                                */s/ William Dunnegan*
                                                William Dunnegan