

THE
HARTFORD

*Lake Success Commercial Claims Center*
*One Hollow Lane*
*Lake Success, NY 11042*
*Telephone: 888-625-2652*
*Fax: 860 392 1988*

December 12, 2007

Via Certified Mail RRR and
Email books@thetextbookguy.com

The Textbook Guy LLC
902 West 13th Street
Tempe, AZ 85281
Attention: Matthew Stirling

RE:    Insured:    The Textbook Guy LLC
       Plaintiff:   Pearson Education, Inc. et. al..
       File No:     YRV 32276

Dear Mr. Stirling:

On behalf of Hartford Casualty Insurance Company (Hartford), this will acknowledge receipt of the summons and complaint captioned Pearson Education Inc., John Wiley & Sons Inc., Cengage Learning Inc. and the McGraw-Hill Companies Inc. against Matthew Stirling dba thetextbookguy.com and John Does Nos 1-5. We regret to inform you that Hartford declines to provide a defense in this matter or to pay any damages for which The Textbook Guy LLC ("Textbook") or Matthew Stirling (to the extent that you may qualify as an insured) may become liable under business liability policy 01 SBA RD6021 issued to Textbook effective commencing July 26, 2007 and cancelled on October 30, 2007 containing Business Liability Coverage Form SS00080405.

The lawsuit arises from the alleged unlawful sale of foreign version textbooks in the United States.   The plaintiffs assert claims for copyright infringement, trademark infringement, and common law unfair competition and seek injunctive relief, and compensatory and punitive damages. The complaint does not indicate the dates that the alleged infringements occurred and we are unable to determine if the allegations fall within the policy period of July 26, 2007 through October 30, 2007.

According to the insuring agreement Hartford will pay those sums that the insured becomes legally obligated to pay as damage because of bodily injury, property damage, or personal and advertising injury to which this insurance applies.  However, we have no duty to defend the insured against any suit seeking damages for bodily injury, property damage or personal and advertising injury to which this insurance does not apply.  Under

Who Is An Insured c. 1. c. Matthew Stirling may qualify as an insured as a member of the limited liability company, but only with respect to the conduct of Textbook's business.

The above policy contain an exclusion applicable to trademark claims: Exclusion p. (7) excludes personal and advertising injury arising out of any violation of any intellectual property rights, such as copyright and trademark. The policy provides a limited exception to this exclusion to the extent that it does not apply to infringement in the insureds "advertisement", as that term is defined, of copyright. However, the limited exception would not be pertinent because the complaint does not allege infringement of copyright in an "advertisement" by Textbook.

The business liability coverage provided by the policy applies only to suits seeking damages because of bodily injury, property damage or personal and advertising injury. It is obvious that violation of trademark and copyright rights does not result in injury to a person's body, nor does it result in property damage as that term is defined in the insurance contracts. Property damage means physical injury to or loss of use of tangible property. Intellectual property rights such as trademark protect intangible property rights only.

Further, the complaint alleges that the defendant's infringement was committed willfully. Exclusion B. 1. a. (2) excludes "personal and advertising injury" arising out of an offense committed by, at the direction of or with the consent or acquiescence of the insured with the expectation of inflicting "personal and advertising injury."

It appears that the summons and complaint was served on Textbook on or about September, 2007, but was not referred to Hartford until December 6, 2007. Textbook may have breached policy conditions E. 2. b. and c. by failing to notify Hartford of the suit as soon as practicable and by failing to immediately forward a copy of the summons and complaint to Hartford.

Because the damages sought in the instant complaint are not damages because of bodily injury or property damage and because the policy specifically exclude trademark and copyright claims, the Hartford disclaims any duty to defend and/or indemnify Textbook or Matthew Stirling (to the extent that he may qualify as an insured).

Your policy provides coverage for "sums that the insured becomes legally obligated to pay as damages." This language is intended to restrict coverage to claims seeking to recover compensatory damages. Accordingly, there is no coverage for declaratory or injunctive relief, as well as costs, expenses and attorneys' fees, as these demands for relief do not constitute legal damages, and thus, are not the proper subject matter for an indemnity insurance policy. Finally, plaintiff also seeks punitive damages, which are not covered under your policy as the courts of New York have held that it is against public policy for an insurance company to provide coverage for punitive damages assessed against an insured.

The grounds for declination of coverage asserted herein are set out to inform you of The Hartford's coverage position. Please be advised that there may be other coverage defenses, not yet apparent, that may come to light as this matter proceeds. The specific enumeration of the policy provisions set forth above is not intended by The Hartford as a waiver of any other policy defenses. The Hartford expressly reserves its right to invoke and rely on any other coverage defenses that may prove to be available under the policy or as a matter of law.

Please feel free to contact me if there are any questions concerning the content of this letter.


Sincerely,

Deborah Hauser
Claims Specialist
One Hollow Lane
Lake Success, NY 11042
Fax 860 392 1988
Deborah.hauser@thehartford.com

cc:      Northeast Agency
        2495 Main Street Suite 209
        Buffalo, NY 14214
        Attention: Claims

        Allstate Insurance Agency
        Attention: Derek Stinson
        Via Facsimile 480 539 1128

# GALBO & ASSOCIATES

Attorneys at Law
1830 Liberty Building
Buffalo, NY 14202
716.332.0151   fax: 716.332.0153
rgalbo@galbolaw.com

Richard A. Galbo
Leo C. Kellett

February 7, 2008

**VIA E-MAIL & US MAIL**

Deborah Hauser
Lake Success Commercial Claims Center
One Hollow Lake
Lake Success, NY  11042

>        Re:  **Pearson Education, Inc., et al. v. Matthew Stirling**
>             **d/b/a thetextbookguy.com**
>             **Your File No. YRV 32276**
>             **Our File No. 08-006**

Dear Ms. Hauser:

Our office represents Matthew Stirling in his coverage claim against Hartford Casualty Insurance Company.  We are writing in response to Hartford's December 12, 2007 letter disclaiming coverage for the above action.  For the reasons discussed below, the coverage limitations and defenses raised in the disclaimer letter do not eliminate coverage for the action, and we ask that Hartford honor its obligations to defend and potentially indemnify Mr. Stirling.

Shortly after Hartford issued its disclaimer letter, the plaintiffs served an Amended Complaint dated December 14, 2007, a copy of which is enclosed.  It is substantially identical to the original, except that paragraph 17 of the original Complaint was eliminated and the plaintiffs listed additional copyrights and trademarks.

Deborah Hauser
February 7, 2008
Page 2

1.    **The plaintiffs allege offenses that occurred during the policy period.**

We understand that Hartford issued Policy Number 01 SBA RD6021 to The Textbook Guy LLC ("Textbook") effective July 26, 2007, and that the policy was cancelled on October 30, 2007.  Section A.1.b.(2) of Business Liability Coverage Form SS 00 08 04 05 of the policy provides in part that: "b.  This insurance applies: . . . (2) To 'personal and advertising injury' caused by an offense arising out of your business, but only if the offense was committed . . . during the policy period."  The disclaimer letter states on page 1:  "The complaint does not indicate the dates that the alleged infringements occurred and we are unable to determine if the allegations fall within the policy period of July 26, 2007 through October 31, 2007."

Paragraph 22 of the original Complaint (paragraphs 21 of the Amended Complaint) states:

> Defendants have without permission purchased Foreign Editions of plaintiffs' books manufactured outside of the United States and resold them to purchasers in the United States through the Internet at the websites thetextbookguy.com, TextbookX.com, Albooks.com, and eBay.com.  As of the filing of this complaint, defendant had one hundred and eighty titles for sale at eBay.com.

(Emphasis added.)

The original Complaint was filed on September 7, 2007, during the policy period.  Therefore, paragraph 22 indicates that allegedly infringing activities occurred on September 7, 2007, during the policy period.  Moreover, Mr. Stirling acknowledges that allegedly infringing activities occurred during the policy period.  Therefore, although this coverage limitation may limit Hartford's obligation to indemnify, it does not eliminate its duty to defend.

2.    **Mr. Stirling is covered as an insured for the action.**

The disclaimer letter next states on pages 1-2: "Under Who Is An Insured C.1.c. Matthew Stirling may

Deborah Hauser
February 7, 2008
Page 3

qualify as an insured as a member of [Textbook], but only
with respect to the conduct of Textbook's business." 
Section C.1.c. of the Business Liability Coverage Form
provides:  "1. If you are designated in the Declarations
as: . . . c.  A limited liability company, you are an
insured.  Your members are also insureds, but only with
respect to the conduct of your business.  Your managers are
insureds, but only with respect to their duties as your
managers."

    All activities alleged in the Complaint were performed
by Mr. Stirling as the sole owner and officer of Textbook.
Mr. Stirling was not acting on behalf of any other person
or entity with respect to the activities alleged in the
complaint.  Consequently, the requirements for insured
status do not limit coverage for Mr. Stirling.

   **3.  Exclusion B.1.p.(7) does not exclude coverage for
       the action.**

    Page 2 of the disclaimer letter states that Textbook's
policy contains:

    [A]n exclusion applicable to trademark claims:
    Exclusion p.(7) excludes personal and advertising
    injury arising out of any violation of any
    intellectual property rights, such as copyright
    and trademark.  The policy provides a limited
    exception to this exclusion to the extent that it
    does not apply to infringement in the insured's
    "advertisement", as that term is defined, of
    copyright.  However, the limited exception would
    not be pertinent because the complaint does not
    allege infringement of copyright in an
    "advertisement" by Textbook.

    Textbook's policy was issued to its main place of
business in Arizona.  It contains a number of Arizona
endorsements and none for any other state.  In addition,
the risks insured apparently do not have a specific
predominant location outside of Arizona.  Consequently, the
interpretation of the policy will be governed by Arizona
law.

    Under Arizona law, exclusion B.2.p.(7) and its
exception must be analyzed in relation to terms defining

Deborah Hauser
February 7, 2008
Page 4

the scope of the relevant coverage.  (See, e.g., Sparks v.
Republic Nat'l Life Ins. Co., 647 P.2d 1127, 1134 (Ariz.,
1982), quoting Federal Ins. Co. v. P.A.T. Homes, Inc., 547
P.2d 1050, 1053 (Ariz., 1976)("[T]he policy must be read as
a whole in order to give a reasonable and harmonious
meaning and effect to all its provisions."); Ariz. Rev.
Stat. § 20-1119 ("Every insurance contract shall be
construed according to the entirety of its terms and
conditions as set forth in the policy . . . .").)
Ambiguities are to be resolved in favor of the insured.
(See, e.g., Security Ins. Co. of Hartford v. Anderson, 763
P.2d 246, 248 (Ariz., 1988).)

     The insuring agreement of section A.1.a. of the
Business Liability Coverage Form provides in part that:
"We [Hartford] will pay those sums that the insured becomes
legally obligated to pay as damages because of . . .
'personal and advertising injury' to which this insurance
applies."  "Personal and advertising injury" is defined to
include "injury . . . arising out of . . . [i]nfringement
of copyright, . . . or title of any literary . . . work, in
your 'advertisement'".

     Exclusion B.1.p.(7) excludes coverage for "personal
and advertising injury" "[a]rising out of any violation of
any intellectual property rights such as copyright, patent,
trademark, trade name, trade secret, service mark or other
designation of origin or authenticity."  The exception
provides that "this exclusion does not apply to
infringement, in your 'advertisement', of (a) Copyright . .
. or (c)  Title of any literary . . . work."

     Consequently, the exception to Exclusion B.1.p.(7)
ensures the continued availability of Hartford's coverage
for "sums that the insured becomes legally obligated to pay
as damage because of" "injury . . . arising out of . . .
[i]nfringement of copyright . . . or title of any literary
. . . work, in [the insured's] 'advertisement'".  Those
policy terms do not require that the claimant allege that
the injury arose out of infringement of copyright or title
of literary work in the insured's "advertisement", only
that the injury in fact arose out of such infringement.
Hartford has a duty to defend any claim involving injuries
that potentially arose out of infringement of copyright or
title of literary work in Textbook's "advertisement" (see
generally, e.g., United Servs. Auto Ass'n v. Morris, 741

Deborah Hauser
February 7, 2008
Page 5

P.2d 246, 250 (Ariz., 1987)), and that potential can be
established through facts outside the Complaint (see
generally, e.g., Kepner v. Western Fire Ins. Co., 509 P.2d
222, 224 (Ariz., 1973); Aetna Cas. & Sur. Co. v.
Dannenfeldt, 778 F.Supp. 484, 499 (D. Ariz., 1991)).

        "Advertisement" is defined in Textbook's policy to
include the "widespread public dissemination of information
or images that has the purpose of inducing the sale of
goods, products or services through . . . [t]he Internet,
but only that part of a web site that is about goods,
products or services for the purpose of inducing the sale
of goods, products or services".  Although not required for
coverage, the Complaint itself indicates that infringing
advertising is involved in the action against Mr. Stirling.

        As previously noted, in paragraph 22 of the original
Complaint (paragraph 21 of the Amended Complaint), the
plaintiffs allege in part that:  "Defendants have without
permission purchased Foreign Editions of plaintiffs' books
manufactured outside of the United States and resold them
to purchasers in the United States through the Internet at
the websites thetextbookguy.com, TextbookX.com,
Albooks.com, and eBay.com."  (Emphasis added.)  Each of
these websites affects sales through "advertisements" as
defined in Textbook's policy.  Consequently, it is implied
in the Complaint that these sales were made through
"advertisements".  Mr. Stirling has confirmed that sales of
foreign editions of the plaintiffs' books were made over
the Internet through advertisements listing, among other
things, the title of each book, and, at least on websites
other than Textbook's, listings were accompanied by an
image of the domestic edition of the book.  These sales
would not have occurred without the solicitation of
purchasers through this advertising.

        In paragraph 29 of the Complaint (paragraph 28 of the
Amended Complaint), without specifying in detail what
actions were violative, the plaintiffs allege that:
"Defendants have infringed the Pearson, Wiley, Cengage and
McGraw-Hill Copyrights in violation of 17 U.S.C. § 501."
If, as alleged by the plaintiffs, the sales of the foreign
editions were in violation of the copyright law, then the
use of the photographs in Textbook's advertisements was
itself also in violation of 17 U.S.C. § 106 of the
copyright law, and actionable under 17 U.S.C. § 501.  (See,

Deborah Hauser
February 7, 2008
Page 6

e.g., AMCO Ins. Co. v. Lauren-Spencer, Inc., 500 F.Supp.2d
721 (S.D. Ohio, 2007); Sony Computer Entertainment Am. Inc.
v. GameMasters, 87 F.Supp.2d 976, 989 (N.D. Cal., 1999).)

     Moreover, Textbook's advertising of foreign editions
of the plaintiffs' books using the titles alone potentially
involves "infringement of title".  In their third claim for
relief, the plaintiffs seek injunctive relief and damages
for common law unfair competition under state law.
Although book titles are not protected under the copyright
law (see, e.g., 37 C.F.R. § 202.1(a)), the improper use of
a title can potentially serve as the basis for a claim of
unfair competition (see generally, e.g., ITC Ltd. v.
Punchgini Inc., ____ N.E.2d ____, 2007 WL 4334177 (N.Y.
2007); Fairway Constructors, Inc. v. Ahern, 970 P.2d 954
(Ariz. Ct. App. 1999); see also 15 U.S.C. § 1125).  If the
plaintiffs prevail in their claims for copyright
infringement, trademark infringement, and/or unfair
competition, then Textbook's use of the titles of the
plaintiffs' books will have amounted to an infringement of
the plaintiffs' titles, actionable itself as a form of
unfair competition.

     The plaintiffs do not expressly state whether they are
seeking direct damages for infringement of copyright or
title in Textbooks' advertisements.  However, in addition
to damages and other injunctive relief, in paragraph E. of
their demand for relief, they request judgment,
"[d]irecting that defendants engage in such additional
activities, including, but not limited to, . . . corrective
advertising, as may be necessary and appropriate to
mitigate the damage defendants have caused".  This request
indicates that the plaintiffs may be claiming that they
were injured by Textbook's advertising itself -- such as
through the loss of good-will and/or fostering of an
interest in and demand for foreign editions that could
undercut sales of domestic editions of the plaintiffs'
books – and could be seeking damages for those injuries.

     Moreover, the Complaint is brief and terse giving only
general notice of the activities for which the plaintiffs
seek damages and other relief (see generally, e.g., Fed. R.
Civ. P. 8(a); Century 21, Inc. v. Diamond State Ins. Co.,
442 F.3d 79, 83 (2nd Cir. 2006)(interpreting New York
law)), and Hartford had a duty to investigate and consider
the full potential significance of those allegations in

Deborah Hauser
February 7, 2008
Page 7

relation to its coverages (see, e.g., Aetna Cas. & Sur. Co.
v. Dannenfeldt, supra).   Mr. Stirling's counsel for the
action, has advised us that the plaintiffs are considering
filing a Second Amended Complaint which would clarify their
intention to recover damages for injuries directly
resulting from infringement in Textbook's advertisements.
Therefore, exclusion B.1.p.(7) does not eliminate
Hartford's duty to defend.

     Even if the plaintiffs do not ultimately request such
damages under the currently governing Complaint or a Second
Amended Complaint, Hartford may be liable to indemnify Mr.
Stirling.   If the plaintiffs establish their claim for
copyright infringement, trademark infringement, and/or
unfair competition claims based on Textbook's sale of
foreign editions of the plaintiffs' books, Textbook will
necessarily have infringed the plaintiffs' copyrights
and/or rights in the titles of the plaintiffs' books in
Textbook's advertising of those books.   Hartford's coverage
applies to damages because of "injury . . . arising out of
. . . [i]nfringement of copyright . . . or title of any
literary . . . work, in [textbook's] 'advertisement'".
Under Arizona law, coverage for liability "arising out of"
a particular cause or circumstance is interpreted to apply
"when there is a 'causal nexus' sufficient to warrant the
conclusion that the [liability creating event] is
'incidental to or connected with'" the covered cause or
circumstance.   (Transport Indem. Co. v. Carolina Cas. Ins.
Co., 652 P.2d 134, 138 (Ariz., 1982); see also, e.g., Regal
Homes Inc. v. CNA Ins., 171 P.3d 610, 614 (Ariz. Ct. App.
2007), quoting Farmers Ins. Co. v. Till, 825 P.2d 954, 955
(Ariz. Ct. App., 1992)("The general rule is that the words
'arising out of' are 'broad, general, and comprehensive
terms effecting broad coverage.'").)

     Textbook's sales of the allegedly infringing foreign
editions of the plaintiffs' books clearly "arose out of"
its internet advertising of those books under the above
test.   Since the imposition of liability for sales would
also establish that there was in fact infringement of
copyright and/or title in Textbook's advertisements, the
exception to Exclusion B.1.p.(7) applies, and the exclusion
does not exclude coverage.

Deborah Hauser
February 7, 2008
Page 8

### 4.    Exclusion B.1.a.(2) does not eliminate the duty to defend.

Page 2 of the disclaimer letter further states: "[T]he complaint alleges that the defendant's infringement was committed willfully.  Exclusion B.1.a.(2) excludes 'personal and advertising injury' arising out of an offense committed by, at the direction of or with the consent or acquiescence of the insured with the expectation of inflicting 'personal and advertising injury.'"

While the plaintiffs allege willful infringement in paragraphs 31 and 41 of the Complaint (paragraphs 30 and 41 of the Amended Complaint), they also allege infringement without willfulness in paragraphs 29 and 39 of the Complaint (paragraphs 28 and 38 of the Amended Complaint). Under all three of the theories of liability alleged in the Complaint, the plaintiffs can potentially recover damages for non-willful infringement.  If the plaintiffs do establish the right to recover, it will be for non-willful infringement, since Mr. Stirling did not know that he was violating the plaintiffs' rights when Textbook advertised and sold foreign editions of the plaintiffs' books. Therefore, exclusion B.1.a.(2) does not eliminate Hartford's duty to defend.

### 5.    Mr. Stirling's possible breach of the notice conditions of Textbook's policy does not vitiate coverage.

Page 2 of the disclaimer letter next states:

It appears that the summons and complaint was served on Textbook on or about September, 2007, but was not referred to Hartford until December 6, 2007.  Textbook may have breached policy conditions E.2.b. and c. by failing to notify Hartford of the suit as soon as practicable and by failing to immediately forward a copy of the summons and complaint to Hartford.

*Note date*

However, under Arizona law, a liability insurer has the burden of proving that it was prejudiced by the insured's late notice to effectively disclaim coverage. (See, e.g., Lindus v. Northern Ins. Co. of N.Y., 438 P.2d

Deborah Hauser
February 7, 2008
Page 9

311 (Ariz., 1968); <u>Liberty Mut. Fire Ins. Co. v. Mandile</u>,
963 P.2d 295 (Ariz. Ct. App., 1997).)  We cannot conceive
of how Hartford could have been prejudiced by Mr.
Stirling's relatively brief delay in giving notice.
Therefore, it is our position that Mr. Stirling's possible
breach of the notice conditions does not vitiate coverage.

> **6.    The plaintiffs' claims for injunctive
> relief and punitive damages do not
> relieve Hartford of the duty to defend.**

Finally, page 2 of the disclaimer letter also states:

> Your policy provides coverage for "sums that the
> insured becomes legally obligated to pay as
> damages."  This language is intended to restrict
> coverage to claims seeking to recover
> compensatory damages.  Accordingly, there is no
> coverage for declaratory or injunctive relief, as
> well as costs, expenses and attorneys' fees, as
> these demands for relief do not constitute legal
> damages, and thus, are not the proper subject
> matter for an indemnity insurance policy.
> Finally, plaintiff also seeks punitive damages,
> which are not covered under your policy as the
> courts of New York have held that it is against
> public policy for an insurance company to provide
> coverage for punitive damages assessed against an
> insured.

As previously discussed, Textbook's policy is most
likely governed by the law of Arizona rather than New York.
It is not clear whether Arizona law would require
indemnification for punitive damages under the facts
involved in this action, or for expenses incurred in
implementing injunctive relief.  In any event, these claims
against Mr. Stirling do not eliminate Hartford's duty to
defend, since other damages clearly covered by Textbook's
policy are also alleged and potentially recoverable.  In
addition, section A.3.a.(5) of the policy provides that
Hartford will pay costs taxed against the insured in a suit
that Hartford defends.

Since the plaintiffs are seeking damages that are
potentially covered under Textbook's policy and not
excluded, Mr. Stirling demands that Hartford honor its

Deborah Hauser
February 7, 2008
Page 10

obligations by agreeing to provide him with a defense
against the action, through counsel of his own choice, and
to reimburse him for defense costs and expenses previously
incurred in the defense of this action.  He also requests
that Hartford indemnify him for damages and expenses
covered under the policy.

    Please also be advised that Mr. Stirling is attempting
to resolve this matter through a settlement, which his
attorneys have been negotiating.  Hartford's
acknowledgement of its obligations could facilitate the
settlement and minimize both defense costs and liability.
It would also obviate the need for a Declaratory Judgment
action against Hartford to enforce your insureds rights
under the Policy.

    We look forward to Hartford's response.

                              Very truly yours,
                              *Richard A. Galbo*
                              Richard A. Galbo

LCK/wjh

cc: Christ Gaetanos
    Matthew Stirling

# GALBO & ASSOCIATES

Attorneys at Law
1830 Liberty Building
Buffalo, NY 14202
716.332.0151   fax: 716.332.0153
rgalbo@galbolaw.com

Richard A. Galbo
Leo C. Kellett

April 18, 2008

**VIA E-MAIL**

Diane DiFranco
Claim Consultant
The Hartford Insurance Company
One Hollow Lane, Suite 301
Lake Success, NY 11042

             Re:   **Pearson Education, Inc., et al. v.**
                   **The Textbook Guy, LLC**
                   **Your File No. YRV 32276**
                   **Our File No. 08-006**

Dear Ms. DiFranco:

     Attached please find a copy of the bill from Amigone,
Sanchez, Mattrey & Marshall, LLP to The Textbook Guy LLC ("TBG"
or "insured"), which covers the cost of defending the action
against Pearson from the date of tender to The Hartford through
to the end of this month, for $35,249.41.  As we advised in
detail in our previous letter to Deborah Hauser of The Hartford,
dated February 7, 2008, it is our position that The Hartford had
the absolute duty to defend its insured against this action and
therefore is required to pay for the defense of this action.

     We will not repeat here all of the reasons stated in our
previous letter as to The Hartford's defense obligation except
to say that The Hartford policy was issued to "TBG" as the named
insured with full knowledge that it was in the business of
distributing books, as this activity is listed on the business
description contained on the Declarations page of the policy,
and with full knowledge of that the policy covers copyright

Diane DiFranco
April 18, 2008
Page 2

infringement occurring in the insured's advertisements.
Notwithstanding this, I am hopeful that if Hartford more fully
understands the insured's activities and the claims made, it
will realize that not only did it owe a defense, but indemnity
for the settlement as well.

TBG's business was to purchase mostly collegiate-level
textbooks and then resell them over the Internet via several
websites, including its own, established predominately for the
advertising and sale of books generally and textbooks in
particular. Most of these books are so-called "foreign
editions," which are virtually identical to the domestic edition
but intended for sale, and often made outside of the United
States.

The Plaintiffs commenced the instant litigation against
TBG, which in turn prompted this claim for coverage.  They claim
that TBG committed copyright violations when it advertised and
sold in the United States versions of certain textbooks that
were produced for sale strictly within foreign markets.
Although the claim is made without much elaboration in the
Complaint, elsewhere in this letter we address why such
elaboration is unnecessary, given recent Supreme Court precedent
and previous copyright precedents, in order for a plaintiff to
recover for copyright violations based on advertising.

The insured was unaware that the sale in the United States
of textbooks produced for foreign distribution might be a
violation of U.S. copyright law. TBG sold virtually all of its
books via the Internet.  That is, it advertised on websites that
its books were available.  The insured never maintained a
physical location where customers could visit to review and
purchase books for sale.  Rather, its Internet postings were the
only ways in which it could, and did, promote and sell its
product.

The postings were themselves the advertisements.  They
consisted of sale listings at numerous websites, listings that
included the title of the book for sale; its author; the
numbered edition of the book; its ISBN ("International Standard
Book Number"); and often, the condition of the book being sold,
the book's general subject matter and a comment or two - which
the insured supplied - about the book for sale (such as whether
the book was a domestic or foreign edition, any material
differences between the two, whether the book was new or used,
its popularity, its availability for certain courses, etc.).

Diane DiFranco
April 18, 2008
Page 3

Postings of the insured's books for sale on websites other than
its own frequently were accompanied by a picture of the cover of
the each textbook for sale. (This itself, aside from being an
advertisement of a product for sale, is a form of "copying" also
subject to the U.S. Copyright Act.)

     Typically, the accompanying picture was of the cover of
the U.S. edition of the book, even though the book advertised as
being for sale was actually the foreign edition. (This
potentially false advertising is also claimed to be a copyright
violation.) But the key point is this: were it not for these
acts of advertising, the insured would not have sold any books.
These acts of advertising were the only way the insured called,
and was able to call itself and the books it wanted to sell to
the attention of the public.

     Thus, the circumstances of the insured's actual business
operations compel the conclusion that it would be artificial and
incorrect to deny coverage by divining a distinction between
injury arising from a sale of goods and injury arising from the
marketing of these same goods by means of advertisements. For
TBG, they are one and the same; there is no meaningful
difference between the two activities.

     Not incidentally, and as a blunt testament to these facts
of the insured's operation and their significance to proving
infringement, the Plaintiffs sought "corrective advertising" as
one component of their requested relief.  More forcefully to the
point, the Permanent Injunction and Final Order ("Final Order")
in the case (which accompanies this letter) repeatedly enjoins
the insured from "advertising."  These two examples alone make
it very clear that TBG's advertising was not only a serious
component of Plaintiffs overall claim against it, but well
within the "infringing" behavior that Plaintiffs wanted to
curtail and redress in this litigation.

     Plaintiffs, in bringing this lawsuit, intend to protect
their domestic market for college textbooks by prohibiting the
sale of foreign editions of these textbooks in the United
States.  These foreign editions almost always are produced - and
therefore are priced - much, much cheaper than are their U.S.
counterparts, even in cases where the domestic and foreign
editions are essentially identical.  In Plaintiffs' view, the
insured - by advertising and selling foreign editions in the
United States - encouraged consumers to buy the cheaper version
of any given textbook.  By bringing suit, the Plaintiffs intend

Diane DiFranco
April 18, 2008
Page 4

to discourage, and perhaps eliminate, any consumer expectations
- which, for practical purposes, they blame on the insured -
that they can beat the Plaintiffs' marketing scheme by
purchasing cheaply a foreign book that is essentially the same
as its domestic counterpart.  So, Plaintiffs chose in this case
to address their serious business problem - the severely
deleterious impact on U.S. sales of foreign editions of
virtually identical textbooks produced for foreign distribution
- by characterizing the insured's behavior (including the
advertising) as infringements under U.S. copyright law.

     This approach is based upon the Plaintiffs' broad reading
of the copyright law, but more importantly, upon recent U.S.
Supreme Court authority.  Plainly, the Plaintiffs believe that
the advertising and sale of foreign editions infringes their
rights.  The Plaintiffs' First Claim For Relief (Complaint pars.
23 - 32 and Amended Complaint pars. 22 - 31) alleges
infringement pursuant to 17 U.S.C. 501, which is the primary
section of the U.S. Copyright Act that defines "infringement."
In turn, this section refers to 17 U.S.C. 106, which describes
in broad terms what rights a copyright holder has (or in other
words, what it means - legally speaking - to have a
"copyright"). Section 106, in turn, implicates 17 U.S.C. 602
which deals expressly with imported goods.

     For members of the bar involved in copyright litigation, a
Complaint that invokes Section 501 in the context of imported
copyrighted goods connotes and denotes any number of direct and
indirect claims concerning the copyright owner's vaguely
circumscribed "distribution" rights and that certainly would
include claims that infringement occurred in advertisements. No
further amplification is needed of this allegation in the
Complaint beyond claiming a Section 501 violation to invoke a
multitude of claims and remedies sought. Therefore, Hartford
cannot ignore the broad nature of these claims or the simple
pleading requirements necessary to state a copyright
infringement claim and offhandedly determine the Complaint and
the facts of this action did not create a duty to defend on its
part. The claims made and the insured's activities do not
justify such a conclusion.

     In 2005, the Supreme Court in *Metro-Goldwyn-Mayer Studios
Inc. v. Grokster, Ltd.*, 545 U.S. 913, 125 S.Ct. 2764, 162
L.Ed.2d 781, considered sections 501 and 106,[1] and others,

---

[1]  The Supreme Court's opinion makes no mention of any section of the U.S.
Copyright Act.  It refers only to the Copyright Act as a whole, at "17 U.S.C.

Diane DiFranco
April 18, 2008
Page 5

elaborated on their current and historical meanings, and
ultimately concluded that "[e]vidence of 'active steps ... taken
to encourage direct infringement,' [citation omitted], such as
advertising an infringing use . . . show an affirmative intent
. . . to infringe, and a showing that infringement was
encouraged overcomes the law's reluctance to find liability when
a defendant merely sells a commercial product suitable for some
lawful use. . . ." Emphasis added. Also, the Court stated that
"a copyright . . . defendant who not only expected but invoked
infringing use by advertisement was liable for infringement on
principles recognized in every part of law." Emphasis added.

    These very clearly stated sentiments – which, according to
the Court, are well established" – express a similarly clear
rule of law that governs every aspect of this case dealing with
the insured's liability: encouraging the sale, by way of
advertisement, of a product whose very sale infringes a
copyright is itself also an infringement of the copyright.  And
therefore, as stated in *Grokster*, section 501 – which is the
very (and only) statute that the Plaintiffs expressly allege as
being the basis of the insured's copyright liability (see
Complaint par. 29 and Amended Complaint par. 28, and par. B of
the demand clause in each Complaint at page 10)- embraces this
principle to the same extent as other forms of infringement.
Thus, section 501 contemplates lots of differing types of
behavior that would be deemed an infringement, most assuredly
and prominently, the advertisement for sale of works whose very
sale might be an infringement.

    Based upon the foregoing as well as our February 7, 2008
letter, it is therefore evident that there is both a factual and
a legal basis that your insured's behavior constituted "personal
and advertising injury" as defined in the policy.  Thus, The
Hartford owed a clear duty to defend its insured in this matter
and should promptly reimburse the insured for all of the defense
costs incurred to defend itself in this action.

---

§ 101 *et seq.*" However, the case is obviously a "501" case because almost
every copyright case is a 501 case, because the Complaint in that case so
alleges, because the briefs to the Supreme Court describe it that way and
because the lower court opinions say so as well [*Metro-Goldwyn-Mayer Studios
Inc. v. Grokster, Ltd.*, 380 F.3d 1154 (9th Cir. 2004) and *Metro-Goldwyn-Mayer
Studios Inc. v. Grokster, Ltd.*, 259 F.Supp.2d 1029 (C.D. Cal. 2003)].

As well, 17 U.S.C. 501 expressly refers to 17 U.S.C. 106, which defines the
rights of copyright.

Diane DiFranco
April 18, 2008
Page 6

Aside from the duty to defend, there is also a duty to indemnify your insured in this matter because acts of copyright infringement occurred in the insured's advertisements, because the advertisements encouraged an infringing use of the textbooks, and because the damages and settlement was computed based upon the number of different textbooks the insured *offered for sale* during the policy period.

It bears repeating that *Grokster* stands for the legal principle that advertising itself is an offense contemplated by 17 U.S.C. 501. *Grokster* is recent and unequivocal – it was decided unanimously – support for the notion that the fact of advertising is itself an act of infringement, at least where as here, the advertising induces or encourages a direct infringement of a copyright. As previously mentioned, the only way in which TBG induced sales (and induced sales of books that the Plaintiffs believe are illegal) was to advertise that it had books to sell. Thus, for the insured, the advertising activity and the sale activity for any given book were inextricable.

It may be helpful to note that the insured's advertising is not merely incidental or occasional marketing or other promotional activity; it is its lifeblood. All of its sales come from the Internet, and a very large share of its total sales came from its postings on websites maintained by other online sellers and marketplaces, which maintain seller ratings (dealing with reliability, timeliness, etc.). These ratings are publicly available, and often are one of the few measures any potential buyer has of evaluating the integrity of any seller. Thus, the insured's postings on these websites not only lead directly to sales – no buyer would buy a book from the insured unless the insured had advertised it, because no seller would otherwise know that the insured was selling the book, and no buyer would know how to contact the insured to buy such a book – but to a reputation as well, which in turn leads to more sales.

TBG unwittingly engaged in allegedly infringing use of the copyrights by promoting the sale of foreign editions through advertising. Violations of the copyright laws trigger damages pursuant to 17 U.S.C. 504, which provides essentially for three basic measures thereof: (a) a plaintiff's lost profits, (b) a defendant's net but ill-gotten profits and (c) "statutory damages" pursuant to 17 U.S.C. 504(c). A plaintiff may also recover attorneys' fees and other costs of litigation. In this case, during settlement negotiations, the insured successfully negotiated its damages limited only to statutory damages

Diane DiFranco
April 18, 2008
Page 7

computed at a per book amount at the very low end of the
statutory scale.

     Statutory damages are not punitive damages.  Instead, they
are awardable in lieu of actual damages and are available only
at a plaintiff's election.  A defendant cannot challenge the
election, and a court may not reject it (although a court does
have discretion regarding the actual statutory damages awarded).
Statutory copyright damages are awarded "to avoid the strictness
of construction incident to a law imposing penalties, and to
give the owner of a copyright some recompense for injury done
him, in a case where the rules of law render difficult or
impossible proof of damages or discovery of profits." *Douglas
v. Cunningham*, 294 U.S. 207; 55 S. Ct. 365; 79 L. Ed. 862 (1935)
(interpreting statutory damage section of the predecessor
copyright statute).  The then Registrar of Copyrights opined
during debates leading to the passage of the current Copyright
Act that statutory damages are awarded only if: (1) the value of
a copyright and its infringement are too hard to determine, and
thus actual damages would be conjectural and ineffective; (2)
actual damages are often less than the costs of prosecuting the
case; and (3) defendant's profits may be small and thus
constitute an inadequate award.  Report of the Register of
Copyrights on the General Revision of the U.S. Copyright Law,
102-103 (House Comm. Print 1961).

     The statutory scale runs from $750 to $30,000 per work
infringed, no matter how many times a given work is infringed.
Upon application, a court may reduce the lower threshold to as
low as $250 per work for so-called "innocent" infringers and may
raise the higher threshold to as high as $150,000 per work for
willful and malicious infringers.

     The Final Order in the insured's case lists 326 separate
book titles that the Plaintiffs claim were advertised or sold or
both by TBG during August, September and October 2007.  These
months are within Policy Period.  The court accepted these
titles and selling period as a legitimate factual basis for the
injunction and damage payment directives in the Final Order.

     According to the Complaint and the Amended Complaint, at
least 180 of these titles were listed on one website alone,
eBay.  As mentioned above, every book that the insured wanted to
sell was listed on one website or another, and those books
listed on websites other than its own were accompanied by book
details, seller comments and pictures of the book cover, all of

Diane DiFranco
April 18, 2008
Page 8

which clearly constitute "advertising."[2]  So, based on this
allegation alone, over half of the infringing titles listed in
the Final Order were listed on just one website, which means
that at least this many were "advertised" during the policy
period.

The Plaintiffs settled on this period during settlement
negotiations mostly because their own investigation showed
allegedly infringing advertising and sales during the first two
of these months and because the insured's business records for
all three months were the most readily available and
comprehensive.  As a practical matter, the insured stopped
selling foreign editions altogether in mid-September 2007,
almost immediately after Plaintiffs served him with the
Complaint (on September 17, 2007).

The Final Order requires the insured to pay amounts
totaling $76,000 as damages for the advertising and sale of
textbooks in violation of Plaintiffs' copyrights.  This amount
was computed somewhat arbitrarily, but nonetheless in
recognition of the obvious fact that the insured's culpability
in the matter was "innocent" infringement and not malicious and
willful and that the insured had both legal and factual defense
to the claims made.

The actual damage award per work was $233.13, less than the
absolute $250 statutory minimum for genuinely innocent
infringers.  Had the matter proceeded to trial or other more
elaborate disposition, the insured almost certainly would have
faced both a higher per work award and a finding of more works
allegedly infringed.  By comparison, the basic statutory damage
minimum, $750, times the number of works listed in the Final
Order, 326, yields a low end damage award of – and concomitant
insurance claim – nearly a quarter million dollars.  Overall,
the insured resolved the matter quite to its and Hartford's
favor, considering the law, the odds and the stakes, as well as
Plaintiffs' imposing resources and Hartford's lack of
participation in the defense.

We believe that there is a strong argument that the policy
entitles the insured to full indemnification for the $76,000
that the insured has been ordered to pay. This is because the
advertising and the sale of the books in question are
inextricably linked, all arguably infringing activities relating

---

[2]  Well over half of TBG's total sales came from sales of books posted on
websites other than its own.

Diane DiFranco
April 18, 2008
Page 9

to the books listed in the Final Order occurred during the
policy period and the infringements occurred by way of
advertising that utilized copyrighted material (e.g. the book
covers and titles).

Since each sale necessarily required accompanying and
assertedly infringing advertisements, there is no way to
separate the damages owed for a sale from damages owed for
advertising.  Indeed, the law itself makes no distinction
between damages for direct violations (viz., sales) and indirect
violations (viz., advertising) of the Copyright Act.

This being so, The Hartford would be held to bear the whole
loss if one cause is covered and the loss is incapable of
apportionment, especially where it chose not to participate,
wrongfully so, in the defense of this action.  However, the
insured would like to resolve the matter promptly. Thus, on its
behalf, we demand that The Hartford pay three-quarters of the
$76,000 court-ordered damages, or $57,000, together with payment
of the insured's legal fees and disbursements.

I look forward to your early response in this matter.

                              Very truly yours,
                              *Richard A. Galbo*
                              Richard A. Galbo

RAG/wjh
Enc.


cc: Matthew Stirling
    Christ Gaetanos, Esq.