UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

PEARSON EDUCATION, INC.,
JOHN WILEY & SONS, INC.,
CENGAGE LEARNING, INC., AND     07-CIV-7890 (PKC)
THE McGRAW-HILL COMPANIES, INC.
                                **AFFIDAVIT**
         Plaintiffs

    vs.

THE TEXTBOOK GUY, LLC
d/b/a THETEXTBOOKGUY.COM,
MATTHEW STIRLING and
JOHN DOES #1-5

         Defendants
_____

STATE OF NEW YORK    )
COUNTY OF ERIE       ) SS:

   **RICHARD A. GALBO, ESQ.**, being duly sworn, deposes and says:

   1.   I am an attorney at law duly licensed to practice in the State of New York and I make this Affidavit in opposition to the Contempt Proceedings initiated by the Plaintiffs in this action.

   2.   In early January of 2008 I was retained by The Textbook Guy, LLC to render a legal opinion as to whether the Corporation's general liability insurer, Hartford Casualty Insurance Company ("Hartford"), had properly disclaimed coverage for this action to my client.  Hartford had declined to afford defense or indemnification based upon the allegations made in the Complaint in this action by letter of December 12, 2007.

3.   After analyzing the matter and researching the standards for the duty to defend and indemnify under Arizona law, the state of incorporation and residence of the corporation and the place where the insurance policy was delivered, I concluded that there was a strong basis to argue that Hartford should have agreed to defend The Textbook Guy, LLC in this action.

4.   I was less certain that Hartford would owe a duty to indemnify due to the limited coverage offered by the policy, that being for the infringement of copyright or title in the advertisements of The Textbook Guy, LLC.  Further, that the policy was in effect for only approximately three months and there was no other insurance available to the corporation.  The Complaint and the Amended Complaint in this action did not contain any specific allegation that the alleged copyright infringement occurred in the advertisements of The Textbook Guy, LLC. and the allege acts of infringement occurred over a period beyond the limited time covered by the Hartford policy.

5.   In due course I proceeded to object to the Hartford's coverage position by letter of February 7, 2008 and by letter of April 18, 2008, as well as through numerous telephone conversations with representatives of Hartford.  The goal of the negotiations was to obtain a settlement of the insurance coverage dispute short of litigation with Hartford.

6. After my initial analysis and letter to Hartford challenging their coverage position, I was advised by my client that The Textbook Guy, LLC could not afford to pay for my legal services to continue to pursue Hartford and that if I wished to continue representing the corporation, my fee for legal services would have to come from any payments recovered from Hartford on their behalf. I agreed to this arrangement with my client.

7. Thereafter, I proceeded to engage in negotiations with Hartford for the purpose of obtaining an agreement that Hartford owed a duty to defend and should pay the legal fees of the Amigone Sanchez firm and should contribute towards indemnifying its insured for at least a portion of the settlement agreed upon with the Plaintiffs in this action. A declaratory judgment action was not preferred due to the cost of litigation and the amount that could ultimately be recovered from Hartford.

8. Unlike the duty to indemnify, which is ultimately governed by the claims proven against an insured within coverage, the duty to defend is governed by the allegations of the Complaint. Hartford vigorously disputed the duty to defend as well as its obligation to indemnify and did not initially agree to pay the legal fees incurred in this action. Rather, Hartford proposed paying 50% of the legal fees and a minimal contribution toward the settlement amount.

9. After lengthy and vigorous negotiations, I obtained an agreement by Hartford that they would pay all of the legal fees

incurred consistent with their duty to defend and that they would pay half of the settlement amount of $76,000 agreed to in this action as a full settlement of the insurance dispute. This agreement was acceptable to my client and finalized on May 12, 2008.

10. Thereafter, I received word from Hartford that they were contacted by William Dunnegan, an attorney for the plaintiffs in this action, by letter dated May 28, 2008 seeking to require Hartford to pay over any insurance proceeds directly to the Plaintiffs in this action on the grounds that Section 3420(a)(2) of the New York State Insurance Law compels proceeds payable directly to the Plaintiffs upon their obtaining a judgment against a Hartford insured.

11. After having been advised of these developments, I became concerned that Hartford would reconsider its agreement to settle this action since it certainly did not want to become embroiled in any controversy between the Plaintiffs and the Defendants in this action. Especially in light of my conclusion that the insurance dispute was settled very much in favor of my client given the limited coverage available under Hartford policy. I was also concerned that Mr. Dunnegan cited a provision of the New York State Insurance Law, Section 3420, that had absolutely no application to this circumstance because the provision applies only to policies issued and delivered in the State of New York. The Hartford policy was issued and

delivered in the State of Arizona and therefore Section 3420 of the New York Insurance Law had no application. Finally, I was concerned that Mr. Dunnegan was attempting to interfere in the contractual relationship between Hartford and my client and in the dispute over the obligations under the policy and the resolution of that dispute.

12. I contacted Mr. Dunnegan with my concerns and I advised him that I had been instructed by my client to make an offer to satisfy the outstanding judgment amount in exchange for a full release from the Plaintiffs in the amount of $33,000. This is the remaining sum available to my client to satisfy the judgment after deducting a fee of $5,000 for my services.

13. I explained to Mr. Dunnegan that these funds were available to satisfy the judgment and that I had been advised that the corporation is out of business and has no further assets. Mr. Dunnegan acknowledged to me the insolvency of the corporation and demanded that payment be made to the Plaintiffs in the sum of $38,000 and that payment of my fee would be my problem and not that of the Plaintiffs.

14. The sum of $33,000 remains on deposit in my escrow account and remains available to satisfy this judgment. I have received no instructions from my client to disburse the funds in any other fashion.

15. It is unreasonable for Mr. Dunnegan to demand that my fee should not be paid out of the proceeds as this was the

5

agreement I had with my client, of which the Plaintiffs are not a party. Furthermore, without my services and efforts, there would be no sum available to satisfy this judgment.

_____
Richard A. Galbo, Esq.

Sworn to before me this
11th day of June, 2008.

_____

PATRICIA L. McGRADY
Notary Public, State of New York
Qualified in Erie County
My Commission Expires 12-11-11

6