```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x

PEARSON EDUCATION, INC.,            :
JOHN WILEY & SONS, INC.,
CENGAGE LEARNING INC. AND           :
THE MCGRAW-HILL COMPANIES, INC.,
                                    :
              Plaintiffs,
                                    :
       -against-                              07 Civ. 7890 (PKC)
                                    :
THE TEXTBOOK GUY LLC
D/B/A THETEXTBOOKGUY.COM,           :
MATTHEW STIRLING AND
JOHN DOES NOS. 1-5,                 :

              Defendants.           :

- - - - - - - - - - - - - - - - - -x
```

PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF
THEIR MOTION TO ENFORCE THE FINAL JUDGMENT AND
ADJUDGE DEFENDANT THE TEXTBOOK GUY LLC IN CONTEMPT

```
                         DUNNEGAN LLC
                         Attorneys for Plaintiffs
                           Pearson Education, Inc.,
                           John Wiley & Sons, Inc.,
                           Cengage Learning Inc. and
                           The McGraw Hill Companies, Inc.
                         350 Fifth Avenue
                         New York, New York 10118
                         (212) 332-8300
```

Table of Contents

Statement of Facts. . . . . . . . . . . . . . . . . .    1

Argument. . . . . . . . . . . . . . . . . . . . . . .    5

I.   THE COURT SHOULD ENFORCE THE FINAL
     JUDGMENT BY ORDERING TTG TO PAY
     $51,000 FORTHWITH . . . . . . . . . . . . . . .    5

II.  THE COURT SHOULD ADJUDGE TTG IN
     CONTEMPT OF THE FINAL JUDGMENT AND
     IMPOSE COERCIVE SANCTIONS . . . . . . . . . . .    6

Conclusion . . . . . . . . . . . . . . . . . . . . .    10

Plaintiffs respectfully submit that the opposition papers of defendant The Textbook Guy LLC ("TTG") affirmatively demonstrate that plaintiffs are entitled to an order:

(i) Enforcing the final judgment and permanent injunction by consent entered March 5, 2008 ("Final Judgment") by ordering TTG to pay (a) forthwith, the remaining $51,000 due under it, and (b) once that $51,000 is paid, the reasonable attorneys' fees of plaintiffs' in collecting that $51,000;

(ii) Adjudging TTG in contempt for failing to use "diligent and energetic" efforts to comply with the Final Judgment; and

(iii) Imposing contempt sanctions to coerce TTG to satisfy the Final Judgment by, for example,

(a) causing TTG's attorney to pay plaintiffs the $33,000 from his escrow account, and

(b) attempting to recover the amounts paid to its attorneys on or after June 2, 2008, specifically $5,000 to Attorney Richard Gelbo and $35,000 to Attorney Christ Gaetanos.

## Statement of Facts

On or about June 2, 2008, after TTG had defaulted in its Court ordered obligation to pay at least $51,000 to plaintiffs, TTG and its attorneys (i) diverted $73,000 from a settlement with TTG's insurer to TTG's attorneys, and (ii) offered to pay

plaintiffs only $33,000 if, and only if, plaintiffs released all their remaining monetary claims under the Final Judgment.

Specifically, there is no genuine dispute as to the following facts.

1. The Final Judgment required TTG to pay plaintiffs $15,000 by April 1, 2008. (Dunnegan Dec. dated June 4, 2008, Ex. A at p. 3)

2. Defendants failed to make that payment. (Dunnegan Dec. dated June 4, 2008, at p. 2, ¶ 2)

3. On April 2, 2008, plaintiffs' counsel sent a letter demanding payment within 10 business days. (Dunnegan Dec. dated April 18, 2008, Ex. B)

4. Defendants again failed to make that payment within those 10 business days. (Dunnegan Dec. dated June 4, 2008, p. 3, ¶ 6)

5. On April 16, 2008, plaintiffs' counsel sent a letter accelerating the amounts due under the Final Judgment and demanding immediate payment of the remaining $51,000 due under it,[1] as well as plaintiffs' attorneys' fees for collection. (Dunnegan Dec. June 4, 2008, Ex. B)

6. On April 18, 2008, plaintiffs obtained an order from this Court directing defendant Matthew Stirling to show cause

---

[1] TTG's calculation of the present value of the payments before acceleration is therefore irrelevant.

2

on April 29, 2008, why an order should not be entered enforcing the Final Judgment and adjudging Mr. Stirling in contempt. (Dunnegan Dec. June 4, 2008, p. 3, ¶ 7; Docket No. 30)

7.   On April 25, 2008, Mr. Stirling filed for bankruptcy in the United States Bankruptcy Court for the District of Arizona. (Dunnegan Dec. June 4, 2008, p. 3, ¶ 7)

8.   On May 6, 2008, Attorney Christ Gaetanos offered on behalf of TTG to pay plaintiffs $33,000 if, and only if, plaintiffs released all their monetary claims against defendants under the Final Judgment. (Dunnegan Dec. June 4, 2008, Ex. C) Plaintiffs declined.

9.   On or about June 2, 2008, Attorney Richard Galbo on behalf of TTG received a $38,000 check from The Hartford Insurance Company ("Hartford"), in partial satisfaction of Hartford's obligations under an insurance policy covering the claims in this action. (Dunnegan Dec. dated June 4, 2008, Ex. G.; Gelbo Aff. at p. 5, ¶ 12-14; TTG Memo at 4)  Hartford issued this check with the understanding that TTG would use the $38,000 to pay a portion of the Final Judgment. (Dunnegan Dec. dated June 4, 2008, Ex. G)

10.  On or about June 2, 2008, Attorney Gelbo deposited this $38,000 check from Hartford in his trust account and thereafter withdrew $5,000, to pay himself 100% of the amount he claimed TTG owed him. (Gelbo Aff. p. 5, ¶ 12)  $33,000 remains in Attorney Gelbo's trust account. (Gelbo Dec., p. 5, ¶ 12)  Attorney

3

Gelbo never filed an action on behalf of TTG with respect to its insurance claim against Hartford. (Gelbo Aff., p. 3, ¶¶ 5, 9)

11. On or about June 2, 2008, TTG caused the Hartford to pay Attorney Gaetanos $35,000. (Dunnegan Dec. June 4, 2008, Ex. G; TTG Memo at 4) There is no evidence that Attorney Gaetanos had any contract with Hartford that required Hartford to pay him directly. This $35,000 represented payment for 100% of the amount Attorney Gaetanos claimed to be due. (Gelbo Aff., p. 3-4, ¶ 9)

12. On or about June 3, 2008, Attorney Gelbo offered on behalf of TTG to pay plaintiffs $33,000 if, and only if, plaintiffs released all their monetary claims against defendants under the Final Judgment. (Gelbo Aff., p. 5, ¶ 12)

13. TTG has not given any instructions to Attorney Gelbo concerning the $33,000 in his trust account other than to use it to satisfy the Final Judgment. (Gelbo Aff., p. 5, ¶ 14)

Argument

I.

THE COURT SHOULD ENFORCE THE FINAL JUDGMENT BY
ORDERING TTG TO PAY $51,000 FORTHWITH

TTG does not dispute that this Court has the authority to enforce the Final Judgment. The only issue is whether the Court should enforce the Final Judgment by ordering TTG to forthwith pay the remaining $51,000 due under it, and thereafter award plaintiffs the reasonable attorneys' fees incurred to enforce the Final Judgment.

TTG's argument that the monetary payments in the Final Judgment have not been accelerated against TTG is incorrect. TTG had actual notice from plaintiffs of the default. Matthew Stirling is the sole owner of TTG (TTG Memo at 1), and TTG does not dispute that Mr. Stirling received the April 2, 2008 letter of plaintiffs' counsel. While TTG argues that the April 2, 2008 was addressed only to Mr. Stirling, the obligation of Mr. Stirling and TTG to pay the amounts due under the Final Judgment were joint and several. (Dunnegan Dec. June 4, 2008, Ex. A, p. 3)

Once a creditor accelerates the amounts due under an instrument for the payment of money, the creditor necessarily accelerates the amounts due from the remaining obligors who are jointly and severally liable. Bank of America, N.A. v. Solow, 19 Misc. 3d 1123A (Sup. Ct. N.Y. Co. 2008)("On March 30, 2007, the

5

vice-president wrote to TAG, addressing the letter to TAG's CEO and copying it to defendant. The letter stated that the loan matured on October 31, 2006, that the writer left numerous telephone messages for the CEO, and "[g]iven Mr. Solow's personal liability in this matter, I left a telephone message with him as well" (Affidavit in further support of motion, Ex. 20). This March 30, 2007 letter suffices as a written demand and notice on Solow, the guarantor, and on TAG. The letter by itself is enough and, given all the telephone calls, defendant cannot claim to be unaware that the guaranty was being triggered.")

Accordingly, the Court should enforce the Final Judgment by ordering TTG to pay the remaining $51,000 due pursuant to it. Once TTG pays that $51,000, the Court should fix the amount of reasonable attorneys' fees incurred in collection.

II.

THE COURT SHOULD ADJUDGE TTG IN CONTEMPT OF
THE FINAL JUDGMENT AND IMPOSE COERCIVE SANCTIONS

TTG admits that there are three elements necessary to adjudge a party in contempt. (TTG Memo at 14)

> "There are three essential elements which must be established before a party can be held in civil contempt: 1) the order must be 'clear and unambiguous,' [citations omitted] 2) the proof of non-compliance must be 'clear and convincing,' [citations omitted] and 3) the contemnor has not 'been reasonably diligent and energetic in attempting to accomplish what was ordered.'" <u>Eros Entertainment, Inc. v. Melody</u>

6

Spot, LLC, 2005 U.S. Dist. LEXIS 43227 (E.D.N.Y. October 11, 2005)

Plaintiffs have established each of these elements.

First, TTG admits that the Final Judgment is "clear and unambiguous." (TTG Memo at 16)

Second, TTG does not contest that it failed to comply with the Final Judgment by paying the amounts due under it. (TTG Memo at 16-17)

Third, TTG has not been reasonably "diligent and energetic" in attempting to comply with Final Judgment. TTG offers no excuse whatsoever for its failure to pay at least $15,000 under the Final Judgment (TTG Memo at 17-19), and admits that there is $33,000 in Attorney Gelbo's escrow account. (Gelbo Aff. p. 5, ¶ 14) TTG even admits that it will not pay this money unless plaintiffs release defendants from the remaining amounts due under the Final Judgment. (Gelbo Aff. at p. 5, ¶ 12)[2] That conduct should compel a finding of contempt.

Moreover, TTG allowed Attorneys Gelbo and Gaetanos to divert $40,000 of TTG's money to themselves, while TTG's obligations to plaintiffs under the Final Judgment remained

---

[2] TTG asserts in its Memo at 17 that "Once Hartford agreed to pay. . .[TTG] offered all proceeds (less Mr. Gelbo's fee) to Plaintiffs, asking only an acknowledgement of payment, nothing more." However, the May 6, 2008, e-mail of Attorney Gaetanos (Dunnegan Dec., Ex. C) and the affidavit of Attorney Gelbo at ¶ 12 contradict that statement, and demonstrate that TTG demanded a satisfaction of the judgment, not a receipt.

7

unsatisfied. Attorney Gelbo had no lien on the proceeds of the settlement with Hartford. In New York, an attorney's charging lien arises only after an attorney commences an action. Section 475 of the New York Judiciary Law provides:

> "From the commencement of an action, special or other proceeding in any court or before any state, municipal or federal department, except a department of labor, or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, judgment or final order in his client's favor, and the proceeds thereof in whatever hands they may come; ..."

TTG therefore had no reason to pay Attorney Gelbo before satisfying its court ordered obligations under the Final Judgment. Similarly, TTG has no excuse for paying Attorney Gaetanos $35,000, or directing Hartford to pay him directly, before paying the Final Judgment. Mr. Gaetanos has no colorable claim to a lien. In essence, TTG allowed Attorneys Gelbo and Gaetanos to structure the settlement with Hartford so that Attorneys Gelbo and Gaetanos would be paid in full, while TTG's Court ordered obligations under the Final Judgment would remained unsatisfied.[3] That conduct should, again, compel a finding of contempt.

---

[3]This conduct of Attorneys Gelbo and Gaetanos raises a substantial ethical and legal issue. Although we do not yet know all of the facts, Attorneys Gelbo and Gaetanos apparently counseled TTG to use the proceeds of the settlement with Hartford to pay them (as unsecured creditors) in full, knowing that this would subject their client to contempt sanctions for failing to pay the Final Judgment. That may be a conflict of

8

The need for sanctions to coerce compliance with the Final Judgment is therefore clear. The Court should impose a coercive sanction upon TTG, in an amount to be determined by the Court, for each day that TTG fails to satisfy the Final Judgment as this Court enforces it. TTG could satisfy that judgment by, among other things:

- Instructing Attorney Gelbo to deliver to plaintiffs' counsel, without conditions, a $33,000 check payable to plaintiffs drawn on his escrow account; and

- Inducing Attorneys Gelbo and Gaetanos to return to TTG the monies they received from TTG and/or Hartford in an amount sufficient to allow TTG to satisfy the Final Judgment by (i) asking them, and/or (ii) suing them.

---

interest that prevents Attorneys Gelbo and Gaetanos from providing the independent advice to which TTG was entitled. <u>See</u> DR 5-101 and <u>In the Matter of Leah Larsen</u>, 50 A.D. 41, 43, 849 N.Y.S.2d 560, 561 (1st Dep't 2008)("Charges 22 through 26 arise out of respondent's advice to her client that it was permissible for her to disregard the court's ruling concerning the repayment of the retirement account and, instead, use those funds to pay her legal fees. The Referee and the Hearing Panel sustained the charges, with the Hearing Panel pointing out that the court's order used mandatory language that could not be ignored and that while respondent maintained that she could have imposed a lien on the escrow account and commenced arbitration for payment of her fees, she failed to follow the procedures and safeguards set out to sustain such an action.")

9

## Conclusion

For the reasons set forth above and in its initial and supplemental memoranda, plaintiffs respectfully request that the Court grant their motion to enforce the Final Judgment, adjudge TTG in contempt and impose contempt sanctions on TTG.

Dated:  New York, New York
        June 17, 2008

> DUNNEGAN LLC
>
> By *William Dunnegan*
> William Dunnegan (WD9316)
> Attorneys for Plaintiffs
>   Pearson Education, Inc.,
>   John Wiley & Sons, Inc.,
>   Cengage Learning Inc. and
>   The McGraw Hill Companies, Inc.
> 350 Fifth Avenue
> New York, New York 10118
> (212) 332-8300

10