86KUMCGC

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------------x

3  THE McGRAW HILL COMPANIES, INC.,
   .PEARSON EDUCATION INC., JOHN
4  WILEY & SONS, INC., CENGAGE
   LEARNING INC.,
5
                    Plaintiffs,
6
            v.                        07 CV 7890(PKC)
7
8  MATTHEW STIRLING, doing business as
   THETEXTBOOKGUY.COM,
   JOHN DOES NOS. 1-5,
9
                    Defendants.
10
   ------------------------------x
11
                                      New York, N.Y.
12                                    June 20, 2008
                                      2:00 p.m.
13

14  Before:

15                  HON. P. KEVIN CASTEL

16                                    District Judge

17                         APPEARANCES

18  DUNNEGAN LLC
         Attorneys for Plaintiffs
19  BY:  WILLIAM DUNNEGAN

20

21  AMIGONE, SANCHEZ, MATTREY & MARSHALL, LLP
         Attorneys for Defendant Matthew Stirling
22  BY:  CHRIST GAETANOS

23

24

25

86KUMCGC

1    THE DEPUTY CLERK:  Your Honor, this matter is the

2    McGraw Hill Companies, Inc., et al., v. Matthew Stirling, doing

3    business as Thetextbookguy.com.

4        Is counsel for the plaintiff ready?

5        MR. DUNNEGAN:  Your Honor, I am Bill Dunnegan.  I

6    represent each of the four plaintiffs, and we are ready.

7        MR. GAETANOS:  Your Honor, my name is Christ Gaetanos,

8    and I represent the defendant Thetextbookguy, LLC.

9        I should also clarify that I am also representing

10   another defendant, Mr. Stirling.

11       THE COURT:  Mr. Gaetanos, let me start with you.

12       Did you personally receive a copy of the final

13   judgment and permanent injunction by consent in this action?

14       MR. GAETANOS:  Honestly, I don't remember.  I received

15   a notice that it was filed.  And when it was, I pulled a copy

16   from Pacer.  That much I know, but whether I received a hard

17   copy from any other source, I do not know.

18       THE COURT:  Let me ask you, did you personally sign

19   the consent to entry, sir?

20       MR. GAETANOS:  I believe I did.

21       THE COURT:  Does that refresh your recollection of

22   your awareness of the injunction in this case?

23       MR. GAETANOS:  Yes.  I am sorry.  I misunderstood your

24   earlier question.  I thought you meant, did I receive a copy of

25   the one signed by the Court from someplace other than Pacer.

86KUMCGC

1   That, I don't know, but I did receive it the day that it was

2   signed and filed.

3          THE COURT:  So you are aware of the court order in

4   this case?

5          MR. GAETANOS:  Yes.

6          THE COURT:  After the date of the Court's order, did

7   you, Mr. Gaetanos, receive funds belonging to the defendant?

8          MR. GAETANOS:  I received a check from the insurance

9   company that was initially made payable to Thetextbookguy, LLC

10  and to Mr. Galbo who was his coverage counsel.  That check was

11  signed over to me.

12         THE COURT:  Thetextbookguy is the defendant in this

13  action?

14         MR. GAETANOS:  One of the defendants.

15         THE COURT:  One of the defendants and one of the

16  parties bound by my final judgment and permanent injunction

17  notice?

18         MR. GAETANOS:  Yes.

19         THE COURT:  The check was made payable to

20  Thetextbookguy and Galbo?

21         MR. GAETANOS:  Yes.

22         THE COURT:  It was in the amount of?

23         MR. GAETANOS:  $35,000.

24         THE COURT:  What did you do with it?

25         MR. GAETANOS:  On the basis of the instruction in the

86KUMCGC

1  letter from the Hartford Insurance Company which accompanied

2  it, it said that it was for defense costs, I deposited it in my

3  operating account.

4          THE COURT:  How could you deposit it if it was not

5  payable to you?

6          MR. GAETANOS:  It was signed over to me.

7          THE COURT:  That's what I am asking you, sir.

8          MR. GAETANOS:  It was signed over to me.

9          THE COURT:  By whom?

10          MR. GAETANOS:  By Thetextbookguy.

11          THE COURT:  Did you present the check to the defendant

12  for signature over to you?

13          MR. GAETANOS:  Yes, I did.

14          THE COURT:  And this took place after the final

15  judgment and permanent injunction in this case?

16          MR. GAETANOS:  Yes, sir.

17          THE COURT:  As a person with knowledge of the Court's

18  order, notice of knowledge of the Court's order who thereafter

19  received moneys covered by the order, why have you not

20  committed the crime of obstruction of justice?

21          And if you don't wish to answer and you wish to get

22  counsel, you are welcome to do so.

23          MR. GAETANOS:  Well, your Honor, I am not a criminal

24  lawyer and I do not know what the elements of obstruction of

25  justice are so I cannot answer your question.  But I can tell

86KUMCGC

1    you this.  When I dealt with Hartford -- actually, I never

2    dealt with Hartford.  When I dealt with Mr. Galbo, Mr.

3    Stirling's coverage counselor, from the time I began it was

4    made clear to me that there were two awards -- one for defense

5    costs and one for indemnity fees.

6         Given the amount of indemnity and given the analysis

7    that I presented in my papers that the 35 to 38,000 dollars

8    that was dedicated by Hartford to the purpose of indemnity,

9    that we were to offer that amount of money to the plaintiffs,

10   that that was in fact, basically, 100 percent of the present

11   value of what was owed under your order, and if that was not

12   accepted, that we would use that money to pay the amounts

13   ordered as they were due, which was a $15,000 payment in April

14   and subsequent monthly payments.

15        THE COURT:  Who is "we"?

16        MR. GAETANOS:  "We" being TBG, my client.  I always

17   understood that my client would use that money to satisfy the

18   TBG debt, one way or another.  His instructions to me was to

19   see if I could negotiate something that would alleviate what he

20   considered to be the burden of dealing with this for the next

21   10 years.

22        May I continue?

23        THE COURT:  Yes.

24        MR. GAETANOS:  Well, I thought a 10-year stream of

25   income has a present value, so I computed a present value and I

86KUMCGC

1    presented that to Mr. Dunnegan.

2            THE COURT:  And it was not acceptable to them?

3            MR. GAETANOS:  Not acceptable to them.

4            THE COURT:  You knew it was not acceptable?

5            MR. GAETANOS:  I knew it was not acceptable.

6            THE COURT:  And you knew there was a court order?

7            MR. GAETANOS:  I knew there was a court order.

8            THE COURT:  So you deposited the money in your

9    account.

10           Let me ask you, the fact that the Hartford measured

11   the amounts that it owed its insured in terms of indemnity,

12   attorney's fees, costs, other expenses, what does that have to

13   do with this matter?

14           MR. GAETANOS:  May I ask you to repeat that question,

15   your Honor?  I don't understand it.

16           THE COURT:  A corporation might put a claim into its

17   insurance carrier for various losses that are covered by a

18   policy of insurance.  Depending on the nature of the policy, it

19   could be out-of-pocket property damage, lost profits,

20   attorney's fees it has incurred -- any number of categories of

21   expense.  That is a claim belonging to the insured that it has

22   asserted against its insurer.

23           The fact that the attorney might have a claim against

24   its client for payment would appear to be of no moment with

25   regard to the obligation of the insurer to pay its insured.

86KUMCGC

1    And here, that's even clearer because the insurer understood

2    that and didn't pay the money to you, nor should it have paid

3    the money to you but paid it to its insured.

4         After it paid it to its insured, you secured your

5    client's -- the insured, the party who is bound by this Court's

6    injunction -- signature on a check paying it over to you?

7         MR. GAETANOS:  Yes.

8         THE COURT:  Why shouldn't I find that you, sir, have

9    personally aided and abetted, nay, committed as a principal, a

10   violation of my order, interfered with the lawful enforcement

11   of that order?

12        MR. GAETANOS:  Well, as I said earlier, I don't

13   believe that I interfered.  There is money in TBG's account

14   that we believe, in one fashion or another, affords the

15   defendant, TBG, to pay the debt as it is ordered in your

16   order -- either direct, which the plaintiffs have not accepted,

17   that is, direct in a lump sum in satisfaction of the

18   obligations or $13,000 in April, etc.

19        THE COURT:  First of all, there is no issue of

20   offering to pay, sir.  It is compliance with an order as to

21   which the party is out of compliance.  As you stand here now,

22   is your client in compliance with my order?

23        MR. GAETANOS:  No, sir.

24        THE COURT:  Why shouldn't I hold your client in

25   contempt today and continue this proceeding to determine

86KUMCGC

1  whether you, sir, should also be held in contempt of this

2  Court's order?

3         MR. GAETANOS:  Insofar as my client is concerned, he

4  did not make the April 1 payment because he didn't have the

5  money.  I know that because he told me and from the financial

6  statement that he supplied to me.  I know it from his tax

7  returns.  I know it from general discussions I have had with

8  his current bankruptcy counsel.

9         THE COURT:  Under the Court's order, what is the

10 consequence of a payment not being made?

11        MR. GAETANOS:  Then it would be a violation of the

12 court order but --

13        THE COURT:  Is there not an acceleration provision?

14        MR. GAETANOS:  There is an acceleration provision.  We

15 argue in our papers that, while it appears that the

16 acceleration was valid against Mr. Stirling, it does not appear

17 to me that it was valid against TBG.

18        THE COURT:  Explain that one to me.

19        MR. GAETANOS:  Well, in brief, I guess I do it this

20 way.  First, this action started out against Mr. Stirling

21 alone, d/b/a Thetextbookguy.com.  As I stand here before you

22 today, I don't know who owns the dot-com address.  I don't

23 know.  I asked and I don't think I ever learned.

24        Towards the end of the negotiations that led to your

25 judgment, I asked Mr. Dunnegan if he would add TBG as a party.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

86KUMCGC

1    Up until then the action was strictly against Mr. Stirling.  He

2    consented to that and to several other requests that I made.

3    And those requests, quite candidly, were intended to enhance

4    the likelihood that I am sure that TBG's insurer would afford

5    coverage.

6              That was one of the things that Mr. Galbo and I felt

7    was a little weak in our insurance claim, so we asked for that

8    change.  That change did not occur until March 5 when the Court

9    signed the judgment.

10             In April when the defendant TBG missed the April 1

11   payment, Mr. Dunnegan sent a letter informing us of the

12   default.  And I believe on April 16 he accelerated the

13   payments, as he was permitted to do under the order.  We still

14   didn't have any money at that point.  When I say "we," I mean

15   TBG.  I don't know that personally but I was in touch --

16             THE COURT:  What about the check you received?

17             MR. GAETANOS:  We didn't have that either.

18             THE COURT:  Had not received it yet?

19             MR. GAETANOS:  No.

20             THE COURT:  So TBG, because of an inability to pay,

21   defaulted.  So why wasn't the sum due and owing by TBG

22   accelerated?

23             MR. GAETANOS:  When, in later April, Mr. Dunnegan

24   commenced a contempt proceeding but only against Mr. Stirling,

25   even the order itself said it was a joint and several

86KUMCGC

1    obligation.  It only commenced the proceeding against

2    Mr. Stirling.  That is very clear from his papers.

3            THE COURT:  What does that have to do with the

4    acceleration?  What does the order to show cause and the

5    request for enforcement have to do with the acceleration?

6            MR. GAETANOS:  May I explain?

7            THE COURT:  Yes.

8            MR. GAETANOS:  Since he started the contempt

9    proceeding against Mr. Stirling, I wondered whether he had

10   forgotten that TBG had been made a party.  So I took the view

11   that only Mr. Stirling had received the acceleration notice and

12   not TBG.  When the Court signed the Stirling order to show

13   cause, paragraph 2 or B of it asks for an injunction -- excuse

14   me -- asks for a contempt with respect only to the $15,000

15   payment.

16           Now, if there had been a valid acceleration against

17   either party -- not dealing with Stirling -- assuming that

18   there was a valid acceleration against Mr. Stirling,

19   presumably, Mr. Dunnegan would have asked for a contempt with

20   respect to the full amount.

21           THE COURT:  But it is up to me to decide whether the

22   terms of the order are clear, unambiguous and whether they have

23   been complied with.

24           MR. GAETANOS:  Agreed.  However, the Court did sign

25   the order in April on the Stirling contempt and signed

86KUMCGC

1    virtually the same order in June seeking contempt of court only

2    on the 15.

3           THE COURT:  You are not suggesting that the order to

4    show cause modified the final judgment and permanent injunction

5    by contempt in this case?

6           MR. GAETANOS:  Not at all.  I am suggesting, however,

7    that TBG did not get notice of the acceleration and, therefore,

8    its primary obligation under the order, given the timing and

9    the terms of the order, was to pay the $15,000.

10          THE COURT:  Have a seat for a second.

11          What evidence do you have that TBG received notice of

12   the acceleration, and was it required to receive notice of the

13   acceleration for the acceleration to occur?

14          MR. DUNNEGAN:  To answer your first question, your

15   Honor, Exhibit B to my declaration in support of the initial

16   order to show cause is a letter of mine dated April 16

17   addressed to, at the top, Mr. Matthew Stirling, Thetextbookguy

18   LLC, and it does say, "Dear Mr. Stirling."

19          THE COURT:  With a copy to Mr. Gaetanos?

20          MR. DUNNEGAN:  Yes.

21          THE COURT:  You can answer my second question also.

22          MR. DUNNEGAN:  I am going to make sure that I get it

23   absolutely right by looking at the provision of the order, your

24   Honor.

25          THE COURT:  I think it is on page 4, and I think there

86KUMCGC

1  is a notice requirement, the last paragraph on page 4 under

2  "Judgment."

3          MR. DUNNEGAN:  The answer to your question would be

4  no.  We gave them a default on April 2.  We said, you are in

5  default.  That is an exhibit to my earlier declaration in

6  support of a different order to show cause.  This one is also

7  attached as Exhibit 5 to Mr. Gaetanos' declaration.  It is a

8  letter dated April 2, addressed again to Mr. Matthew Stirling,

9  Thetextbookguy LLC, and then there is an address.  It says:

10 "We are writing to advise you that you are in default in making

11 a $15,000" --

12         THE COURT:  OK.

13         MR. GAETANOS:  I think that is all the notice that one

14 needs that a payment was made.  I don't think that we needed to

15 send another letter and say, We have now accelerated because 10

16 calendar days have run.

17         THE COURT:  Isn't that the letter of April 16th, in

18 any event, that the grace period for making the payment has

19 expired and they hereby exercise their right to accelerate the

20 remaining?

21         MR. DUNNEGAN:  I think so.  Between the two of them,

22 it seems to be fairly clear that we have acceleration.

23         THE COURT:  Stop.

24         Mr. Gaetanos, I have in front of me a letter addressed

25 to Mr. Matthew Stirling, Thetextbookguy LLC, dated April 2,

86KUMCGC

1    2008, placing Thetextbookguy on notice of the default and a

2    second letter to Mr. Matthew Stirling, Thetextbookguy LLC,

3    dated April 16, 2008, advising of the acceleration.

4            Did your client receive the two letters?

5            MR. GAETANOS:  To the best of my knowledge, he did.

6            THE COURT:  Then I don't understand your argument that

7    your client did not receive notice of default or acceleration.

8            MR. GAETANOS:  Again, from the orders to show cause

9    which seek to hold my client in contempt for $15,000, I could

10   not explain for myself and still cannot why if, say, as of

11   April 16, the date of the acceleration letter, the amount due

12   is $51,000 and yet the contempt was only for 15 -- I still

13   don't understand that distinction.

14           THE COURT:  Of what moment does that have to me at

15   this juncture?  If Thetextbookguy received a notice of default

16   and a notice of acceleration, of what moment does the content

17   of the order to show cause have at this juncture?

18           MR. GAETANOS:  Given the nature of our discussions

19   from the beginning, my discussions with Mr. Dunnegan from the

20   beginning of this lawsuit through around June 3rd when we

21   stopped speaking, I believe that he thought that only Stirling

22   was the defendant.  And at some point it occurred to him that

23   someone else was the defendant, too -- I don't mean to question

24   the Court's order.  I am not trying to change it or address the

25   merits.  That's all that I thought.

86KUMCGC

1      THE COURT:  Maybe you have, in your view, a lazy,

2   stupid adversary -- and maybe you do.  I have no reason to

3   believe that, but let me humor that prospect for a moment.  Of

4   what moment is that with regard to your client's obedience to

5   the Court's order and your obedience to the Court's order and

6   your obligation not to interfere with a lawful court order?

7      MR. GAETANOS:  As to the second point, your Honor, as

8   I said before, it is my view that there is a sufficient sum to

9   pay the amount of money due under the court order, absent the

10  acceleration issue.  As to the acceleration issue --

11     THE COURT:  But it has been accelerated, and that

12  money is not due under some contract; it is due under my order.

13     MR. GAETANOS:  The defendant TBG, as I understand it

14  from the documents I have read and discussions I have had with

15  my client and bankruptcy counsel, he does not have that money.

16     If the Court decides that he owes that money

17  immediately and he doesn't have it --

18     THE COURT:  No.  He owes it immediately.

19     The question is whether you are in compliance with the

20  court order.  You have acknowledged your client's receipt of

21  the notice of default, the nonpayment on the record here today

22  and the acceleration.  So he owes the money.

23     What is your argument for him not owing the money,

24  sir?  I don't understand it.

25     MR. GAETANOS:  As I said in my papers and earlier

86KUMCGC

```
 1    today, given the nature of the notice and the tenor of this
 2    action from the very beginning, we had a question that only
 3    Mr. Stirling received the notice.  It still strikes us as odd
 4    that a contempt proceeding was filed only against --
 5              THE COURT:  It may strike you odd, sir.  What is your
 6    argument?  I have the correspondence which is clearly addressed
 7    to Thetextbookguy LLC.  What, sir, can you present as a
 8    nonfrivolous argument for your client's belief that a default
 9    had not been declared and acceleration occurred?
10              MR. GAETANOS:  Your Honor, I apologize for not being
11    able to convince you.  I have said to you what I believe to be
12    the case and why, given related transactions -- I do not mean
13    to question the Court's order; I never did, and I don't now.
14    What I mean to do is to say that I just found it odd that a
15    joint and several obligation directed towards Mr. Stirling
16    results in an acceleration of an obligation that TBG is
17    obligated on as well.
18              THE COURT:  Your observation of it being odd is noted
19    for the record, but that is not the purpose for us being here
20    today, for you to make such observations.  I would be delighted
21    to hear such evidence that you have as to why your client
22    should not be found in contempt and why this Court should not
23    sua sponte issue an order to show cause with regard to your own
24    interference with a lawful court order.
25              MR. GAETANOS:  May I address that point?
```

1        THE COURT:  You may.

2        MR. GAETANOS:  The authorities on the point list three

3    items that a movant in a contempt proceeding has to prove --

4    noncompliance, no ambiguity in the court order, and that the

5    alleged contemnor has acted diligently and earnestly.

6    According to the Chao case, which I did not cite in my papers

7    because I did not find it in time, cited in January 2008 by the

8    Second Circuit.  It is the movant that has these obligations.

9        It is our view that the movant not only has the burden

10   of proof but the burden of persuasion and the burden of going

11   forward as well.  Having said that, TBG has come forward --

12       THE COURT:  You are not suggesting that the burden of

13   proof is on the plaintiff to show your client's inability to

14   pay, are you?

15       MR. GAETANOS:  I am quoting from the Chao case.

16       THE COURT:  Are you?  I think that is a fair question.

17       I have read the Second Circuit's learning in Huber v.

18   Marine Midland, 51 F.3d 5 in which the court made it very clear

19   as to where the burden of proof lies.

20       MR. GAETANOS:  Yes, sir.

21       As of the three cases that I focused on, Danforth,

22   Chao and Allied Vision, all three of them say that the movant

23   must establish, and then it lists those three elements.  They

24   state very clearly, and they are more recent than the Huber

25   decision.

86KUMCGC

1          THE COURT:   I am sorry.   Did they overrule or modify

2     Huber?

3          MR. GAETANOS:   I don't know that they modified Huber.

4     Chao was decided January 24, 2008.

5          THE COURT:   Let me take a look at it.

6          MR. GAETANOS:   I have turned to headnote 10.

7          THE COURT:   I find nothing in Chao which flips the

8     burden of proof on inability to comply, "though the movant must

9     establish, as they did previously, that the order was clear and

10    unambiguous, the court needs to find by clear and convincing

11    evidence that the order was not complied with and that the

12    alleged contemnor has not clearly established his inability to

13    comply with the terms of the order, and that the movant must

14    demonstrate that the alleged contemnor has not been reasonably

15    diligent and energetic in attempting to comply."

16          In this case, the movant has come forward with

17    evidence that Thetextbookguy and one Christ Gaetanos signed

18    over a check made payable to Thetextbookguy and its insurance

19    counsel to Mr. Gaetanos.   Why doesn't that more than amply

20    satisfy any requirement that the plaintiff demonstrate that the

21    alleged contemnor was other than diligent?   Why doesn't that

22    satisfy their burden?

23          MR. GAETANOS:   From the time of the order, March 5,

24    2008, TBG was on its way out of business.   Despite the fact

25    that it was on its way out of business, I was instructed to

86KUMCGC

1    pursue not only a claim for defense costs, but a claim for

2    indemnity and so was Mr. Galbo, as far as I know -- I assume he

3    was because he continued to work on it.  We continued to work

4    on it.  That is diligence.

5         I don't believe that anything in the court order

6    mandated TBG to stay in business or to pursue any of its claims

7    against anyone, to produce any money for any purpose.

8    Nonetheless, although it went out of business, it instructed me

9    and instructed Mr. Galbo to pursue that claim extensively.  We

10   pursued that claim extensively.

11        We got an award in what Mr. Galbo described as an

12   exceedingly difficult proceeding.  And when we got it, we

13   didn't hide it.  Before we got it, we were notified somewhere

14   around May 6, 2008 that we were going to get this award.

15        Somewhere around that time, I got word from Mr. Galbo.

16   Once I had that word. I contacted Mr. Dunnegan and gave him my

17   proposal.

18        THE COURT:  Your proposal was not paying the moneys

19   that were coming to Thetextbookguy, correct?

20        MR. GAETANOS:  I'm sorry?  I didn't understand the

21   question.

22        THE COURT:  Your proposal was not to pay over the

23   moneys that were coming to your client in full.  Your proposal

24   was to renegotiate the terms of the final judgment.  Am I

25   wrong?

86KUMCGC

1      MR. GAETANOS:  No.  You are not wrong, however, if I

2  can address that.

3      THE COURT:  Not if you want to entertain in front of

4  me how reasonable your position was that the order of this

5  Court should have been modified because, if that was your

6  position, your application should have been made to this Court

7  and not a negotiating table.  It matters not at this stage

8  because your efforts were unsuccessful.  There was an order.

9  The question is not whether you were reasonably diligent in

10  trying to get the order that a party has not complied with

11  modified; the question is whether you were reasonably diligent

12  in complying.

13      MR. GAETANOS:  I have explained why I believe that was

14  the case.  In terms of modifying the court order, the Court is

15  absolutely correct.  I could have made a motion at some point

16  between May 5th and March 5th -- subsequent to March 5th to

17  seek a modification from the court order.

18      THE COURT:  And you didn't?

19      MR. GAETANOS:  I did make a decision that I thought

20  that my chances of modifying this court order would be greater

21  if I could achieve some level of agreement with the plaintiffs.

22      THE COURT:  You are not urging your efforts to get the

23  plaintiffs to modify the order as evidence of diligence in

24  complying with the order, are you?

25      MR. GAETANOS:  No.  I am urging it as an attempt on my

86KUMCGC

1    part to deal with this extra-judicially first.  And if there

2    was an agreement, then we would need to come back to the Court

3    to have the Court modify its order.  There was no question

4    about that, and I was never trying to evade the Court's order

5    in that respect.

6          THE COURT:  But as we stand here today, the Court's

7    order is neither modified nor complied with and you hold moneys

8    that were payable to your client -- personally, you hold those

9    moneys, correct, unless you have spent them?

10          MR. GAETANOS:  No, I have not spent them.  I don't

11   know what to say, your Honor.  While it is true I could file a

12   motion for everything -- and I am not a trial lawyer, in

13   general -- but it has been my practice in dealing with the

14   courts, most judges I know want to know at some point, has

15   there been any discussion about what I have been asked to rule

16   on and that was my aim in contacting Mr. Dunnegan, period.

17          THE COURT:  That is just wonderful, but I ask you a

18   question that was directed towards such evidence as there may

19   be in this record as to reasonable diligence in complying and I

20   have heard a story about reasonable diligence maybe in seeking

21   a private party to join you in endeavoring a modification of

22   the court order, which strikes me as somewhat different.

23          MR. GAETANOS:  From the beginning, October 2007,

24   before there was any discussion about a settlement, we

25   disclosed the financial condition of TBG and, I believe,

86KUMCGC

1  Mr. Stirling.  So the parties knew this almost from the

2  beginning, that we had parties that were seriously in debt.

3         We kept the discussion going, to the extent that we

4  even arranged a telephone conversation with Mr. Stirling's

5  bankruptcy counsel and the plaintiffs' attorney, Mr. Dunnegan.

6  We were always concerned about the same problem, and that is

7  whether the defendant could afford the obligation.

8         Now, when it came time for March 5 and the order to be

9  signed, TBG had in excess -- it is in Exhibit 2 of my papers --

10  the financial statement as of March 1 shows in excess of

11  $50,000 -- either just above or just below 50,000.  Most of it,

12  in fact, almost all of it consisted of books, some of which we

13  agreed as part of this order to turn over to Mr. Dunnegan.  To

14  my knowledge, those books were turned over.

15         Once that happened, TBG had less assets, fewer assets,

16  but it did have an insurance claim and it had, in the judgment

17  of Mr. Galbo, a chance to get a substantial amount of money

18  from it.  And although I am not an insurance lawyer, I did

19  review his work and I had the same conclusion.  So I myself

20  told Mr. Stirling, let's go for it.  It looks pretty good.

21  And, we were correct.

22         THE COURT:  It doesn't do these people any good

23  because you put the money in your pocket.

24         MR. GAETANOS:  I did not put the money in my pocket.

25  I put money in my account that I believe I had a lien to and

1    that the insurance company directly allocated for me.

2              THE COURT:  What is your authority for an attorney's

3    lien in the absence of your not having commenced an action?

4              MR. GAETANOS:  The retaining lien is a possessory

5    lien.  And in all honesty, I have examined that and I cannot

6    find any authority.  Perhaps my research is not careful, but I

7    have not found any authority dealing with the question of

8    priority between a judgment creditor and an attorney.

9              What I know on that issue is that a retaining lien can

10   only be determined in a plenary proceeding, which I suppose it

11   could be a brand new case or part of this proceeding.  I am not

12   sure what a plenary proceeding is, but I imagine it is an

13   evidentiary proceeding.

14             If I was mistaken in my analysis, then I am, but the

15   fact is that I have not hid anything.  In fact, we didn't hide

16   anything from the plaintiffs.  We told them exactly what we

17   were doing.  We got an award.  We told them what we were going

18   to do with it.  It is not a secret.

19             If I have to defend my retaining lien in a plenary

20   proceeding and if the Court orders that, then I will do that.

21             THE COURT:  I will never order you to defend your lien

22   in a plenary proceeding.  Why would I do that?  Why would I

23   order you to defend your lien in a plenary proceeding?

24             MR. GAETANOS:  As I understand New York statutes on

25   the subject, it can't be determined except in a plenary

86KUMCGC

1    proceeding.

2        THE COURT:  Therefore I should order you to have a

3    plenary proceeding?  Where should I order you to have your

4    plenary proceeding, Mr. Gaetanos?  I am curious.

5        MR. GAETANOS:  I am not suggesting that the Court do

6    it.

7        THE COURT:  You just said that, unless the Court

8    orders it be adjudicated in a plenary proceeding -- I thought I

9    heard you say that, but maybe I misheard.

10        MR. GAETANOS:  I am relating to the Court my

11   understanding of the extent of a retaining lien.

12        THE COURT:  But you are talking about what I might do

13   in this case as relief.  That's the point I am addressing, sir.

14        MR. GAETANOS:  OK.  Maybe I spoke too loosely, and I

15   apologize for that.  I wasn't suggesting it or seeking it.  I

16   am simply saying that, if that is what I am confronted with, I

17   will go through it.

18        THE COURT:  Do you have a plenary action pending

19   anywhere on earth to enforce the lien?

20        MR. GAETANOS:  I do not have that action.  It seems to

21   me from the cases that I have read and the two that I remember

22   are old New York Court of Appeals cases -- one is Robinson and

23   the other is Cooper -- that an attorney is not in a position to

24   enforce that retaining lien.  I may misunderstand that.  I am

25   certainly no expert in retaining liens, but I at least did the

86KUMCGC

1    research.

2         THE COURT:  You don't seem to be particularly mindful

3    or respectful of lien law.  As I understand it, there couldn't

4    be any lien right now that you might have because you took the

5    money.  You have the money.  Your client doesn't have the

6    money.  The judgment creditor doesn't have the money.  You have

7    the money in a bank account to which -- is it an escrow

8    account, sir?

9         MR. GAETANOS:  No, sir.

10        THE COURT:  You have it in your operating account.

11        I assume you don't generally have liens on money in

12   your own operating account in your favor?

13        You have asserted title to the money.  Am I wrong?  Am

14   I being unfair to you, sir?  Am I mischaracterizing or

15   misdescribing?  You have no lien to assert.  You have the

16   money.

17        MR. GAETANOS:  As I said earlier, your Honor, it was

18   my understanding that there were sufficient assets to cover

19   this judgment, number 1; and, number 2, that I did not see that

20   this Court order affords any one creditor priority over any

21   other creditor.

22        For instance, if TBG had an electric bill or a credit

23   card bill on which it had a loan, it could easily pay those

24   bills as well --

25        THE COURT:  Very interesting.  Let's see now.  The

86KUMCGC

1    electric company has no notice of my order or injunction, and

2    the Thetextbookguy writes a check to the electric company and

3    they cash it.  It would seem to me that there would be no

4    argument that the electric company is in contempt of my order

5    or has committed the crime of obstruction of justice.  That

6    would seem to be wholly frivolous.

7          But you, Mr. Gaetanos, have signed the consent,

8    personally signed the consent to entry of this injunction on

9    behalf of your client.  You, Mr. Gaetanos, have personal

10   knowledge of this Court's order.  And you, Mr. Gaetanos, with

11   knowledge of that order, deposited the money in your operating

12   account.

13         It strikes me, sir, that you are not similarly

14   situated to your electric company, with all due respect.

15         MR. GAETANOS:  And, your Honor, I had and have

16   absolutely no intention to obstruct justice or to violate this

17   Court's order or to instruct my client to do either of those

18   things.

19         THE COURT:  Do you intend to comply with the Court's

20   order?

21         MR. GAETANOS:  Me personally?

22         THE COURT:  No.  Why you?  You are the person who has

23   the money?

24         MR. GAETANOS:  No.  I do not have all the money.  I

25   have some of the money.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

86KUMCGC

1          THE COURT:  What happened to the money?

2          MR. GAETANOS:  The $38,000, the last I understood is

3   in Mr. Galbo's trust account.  I reread his affidavit.  I am

4   confused.  It seems to say that he took the 5 out and has 33

5   left.  I understand from my conversations with him that it was

6   different than that.  That's that money.

7          Secondly, if I have done something that the Court

8   finds is a violation, then I will cure that violation.  I

9   certainly didn't sit down and think, how can I mess with the

10  plaintiffs or certainly not with the Court.  That was never my

11  desire.

12         My desire was to have Mr. Stirling and TBG see the

13  back end of this case as soon as possible and I thought I had

14  come up with a plan to do it, and until June 2 we had no

15  resources with which to implement this plan.  About a month

16  before then, as I said earlier, we were told from Hartford that

17  we would have money.  And it was at that point, even before we

18  had it, that we attempted some resolution.  Those were the

19  things that motivated me, not an effort to undermine this

20  Court's authority in any respect or certainly to advise my

21  client to do that.

22         THE COURT:  Are you proposing anything at this

23  juncture today?  Are you proposing to do something with regard

24  to getting you and your client in compliance with this Court's

25  order?  If you are, I would like to hear what it is.

86KUMCGC

1       MR. GAETANOS:  Yes, sir.  As I said. Mr. Galbo has

2   either 33,000 or 38,000 dollars in his trust account.  I don't

3   know which number.  I don't know --

4       THE COURT:  Maybe the better way to do this is for me

5   to put this over and then you can tell me retrospectively what

6   you have done in the past tense because it sounds to me that

7   you don't plan and your client doesn't plan on paying.

8       MR. GAETANOS:  No.  That is not true at all.  That is

9   not true at all.

10      THE COURT:  What are you paying and when?

11      MR. GAETANOS:  We will pay, starting with Mr. Galbo's

12  money --

13      THE COURT:  No.  What are you paying and when?  Give

14  me a dollar and when -- a dollar amount and when are you

15  paying?

16      MR. GAETANOS:  The authority I have for my client is

17  to offer the April 1 payment immediately.

18      THE COURT:  To whom, to me?

19      MR. DUNNEGAN:  No.  To the plaintiffs.

20      THE COURT:  I am talking about getting into compliance

21  with my order.  Do you have a proposal to get in compliance

22  with my order?

23      MR. GAETANOS:  Yes, sir.  It is a multi-step thing,

24  and if I could have a moment.

25      THE COURT:  Does it require modification of my order?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

86KUMCGC

1          MR. GAETANOS:  It does not.

2          THE COURT:  How quickly will you be in full compliance

3     with my order?

4          MR. GAETANOS:  Based on the discussion that we had

5     earlier, as I understand it, it is your holding that the

6     defendant TBG owed $51,000.  As I said, I have taken a

7     different view but the Court has held at 51.  This is what we

8     will do.  We will pay $51,000.

9          THE COURT:  When is the money going to be paid?

10         MR. GAETANOS:  I can pay --

11         THE COURT:  When is the money going to be paid?

12         MR. GAETANOS:  I cannot speak for Mr. Galbo, but I can

13    do this.  By Tuesday, Mr. Dunnegan will have a check from me

14    for -- your Honor, I have to step back.  I don't know.

15         May I ask this question?  If the Court could give,

16    under the circumstances, until Wednesday, and if the Court says

17    that we need to pay $51,000 immediately, then by Wednesday the

18    plaintiffs will have $51,000.

19         THE COURT:  What you are going to get out of me, the

20    best that you are going to get out of me, sir, is that I will

21    put this matter over and I will put the rearview mirror on the

22    adjourn date as to what happened and then assess what I should

23    do from there.  That's what you are going to get.

24         Do you want me to kind of bargain with you on my

25    order, have a second order and see whether I do better with the

86KUMCGC

1    second order from the Court than I did with the first order?

2    Is that what you are hoping I am going to do here?

3         MR. GAETANOS:  No, sir.

4         THE COURT:  I am going to put this over, and then I am

5    going to have you stand before me and tell me whether the

6    defendants are now in compliance with the Court's order.  If

7    they are not, I will then proceed to adjudicate all other

8    issues.

9         Now, I will invite the parties to address whether the

10   attorney for a party is bound by the Court's order as a person

11   with knowledge of the Court's order, as would be the case with

12   an injunction under Rule 65 which is binding on other persons

13   who are in active concert or participation with a person who is

14   bound by the order -- and it only binds people with actual

15   notice of it.  I will hear on that, and I will also hear on any

16   additional procedural protections that Mr. Gaetanos and Mr.

17   Galbo are entitled to.

18        MR. GAETANOS:  May I ask a question, your Honor?

19        THE COURT:  I am not sure that I can answer your

20   question, but you can say whatever you would like to say.  You

21   can ask whatever you would like to ask, and I will let you know

22   whether it is appropriate for the Court to answer a question.

23        The reason I put this caveat on it is that, having

24   listened to you, it sounds to me that there is a predilection

25   on the part of the defendant to want to negotiate the terms of

86KUMCGC

1    compliance with an already existing order.

2           What I am offering to you, sir, is putting this over

3    to a date and then asking you on that date, and asking the

4    plaintiffs on that date, whether the defendant is now in

5    compliance with the Court's order.

6           MR. GAETANOS:  Understood, your Honor.

7           If on this new date the Court asks me whether I

8    believe we are in compliance with that order, I need to be able

9    to say yes or no.  Therefore, I need to know precisely what,

10   under the present circumstances, the Court would consider to be

11   compliance -- at least insofar as the financial obligation.

12          THE COURT:  No, you don't.  You have a Court order.

13          If you have an argument that you would like to raise

14   today as to why this Court's order and final judgment are not

15   clear and unambiguous, I will entertain that.  But the order is

16   the order of March 5, 2008 and I have not heard you advance an

17   argument that the order is not clear and unambiguous.

18          MR. GAETANOS:  May I assume then that the Court has

19   ruled that the acceleration is valid against TBG?  May I assume

20   that?

21          THE COURT:  As I said, sir, I don't hondle with you.

22   I don't, not with you.

23          I can proceed today with this contempt proceeding,

24   bring it to conclusion and make findings of fact and

25   conclusions of law.  There will then be an order issued by this

86KUMCGC

1    Court, either by way of so ordering the transcript of this

2    afternoon or my entering a separate order this afternoon, in

3    which event you will have an order.  It will not be necessary

4    for you to come back then.  The matter will have been

5    adjudicated.

6          The alternative to that, sir, which, with due respect,

7    I think is generous under the circumstances is, I am willing to

8    put this over.  If I am looking in the rearview mirror at a

9    party that is now in compliance with the Court's order, the

10   matter may look quite different.  Depending on what I hear from

11   plaintiffs, there may not be a need for further proceedings.  I

12   won't reach that because I need not.

13         So basically, sir, what I am saying to you is that, we

14   continue with this proceeding.  I will make findings of fact

15   and conclusions of law after hearing everybody fully today and

16   then we will be done, subject to if I find a basis for holding

17   somebody in contempt, I will look at the range of remedies for

18   civil contempt and I will decide what is appropriate under the

19   circumstances and we will be done; or I can put this over for a

20   reasonable period of time and we can come back, and if it is

21   necessary for me to make findings of fact at that juncture, I

22   will.

23         Do you want me to put this over?

24         MR. GAETANOS:  Yes, sir.

25         THE DEPUTY CLERK:  Wednesday, July 2 at 11:30 a.m.

86KUMCGC

```
 1              THE COURT:  And if there is a need on the part of the

 2    plaintiffs for a supplemental order to show cause directed to

 3    nonparties, you will present me with one.  If you feel there is

 4    no need, you won't present me with one.

 5              Is there anything further?

 6              MR. GAETANOS:  No, your Honor.

 7              THE COURT:  Thank you all.

 8

 9                             o    0    o

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```