```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

PEARSON EDUCATION, INC.,
JOHN WILEY & SONS, INC.,
CENGAGE LEARNING, INC., AND
THE McGRAW-HILL COMPANIES, INC.,

                Plaintiffs,
                                              07-CIV-7890 (PKC)
     vs.

THE TEXTBOOK GUY, LLC
d/b/a THETEXTBOOKGUY.COM,
MATTHEW STIRLING and
JOHN DOES #1-5,

                Defendants.
_____
```

## MEMORANDUM OF LAW OF
## RICHARD A. GALBO, Esq. IN OPPOSITION TO
## PLAINTIFFS' MOTION FOR CONTEMPT

Richard A. Galbo, Esq.
GALBO & ASSOCIATES
420 Main Street
1830 Liberty Building
Buffalo, New York 14202
(716) 332-0151

RICHARD A. GALBO, ESQ., respectfully submits this Memorandum of Law in opposition to the Plaintiffs' motion to adjudge the undersigned in contempt of the Final Judgment and Permanent Injunction by Consent entered March 5, 2008 in this action. I respectfully submit that based upon the Declaration accompanying this Memorandum of Law and the exhibits attached thereto, that at all times I acted properly in representing The Textbook Guy, LLC ("TTG") with respect to my limited engagement to represent TTG in pursuing its legal rights under a Commercial General Liability Insurance Policy issued by Hartford Casualty Insurance Company ("Hartford") and that I in no way induced TTG or its principal, Matthew Stirling, to violate the Final Judgment. As such, I respectfully request that the Court deny the Plaintiffs' motion as directed against me.

**STATEMENT OF FACTS**

Based upon the Declaration and the documentary evidence submitted therewith, I am not a party to this action nor did I act as attorney of record for any party in this action. I was hired by TTG for the sole purpose of securing insurance coverage for it under the policy issued to it by Hartford. TTG retained the service of other counsel, Amigone, Sanchez, Mattrey &

2

Marshall ("Amigone, Sanchez"), to defend it in this action and also had retained the services of bankruptcy counsel.

Due to the financial condition of TTG, I proceeded to represent it in the insurance dispute with Hartford with the understanding that any legal fee would be paid from the settlement proceeds. Despite numerous obstacles to establishing coverage, I secured an agreement from Hartford to defend TTG, to pay the legal bill of Amigone, Sanchez and to indemnify TTG for one half of the settlement amount and Judgment in this action. This was a difficult endeavor due to the fact that the Hartford policy covered only three months of the business operations of TTG and TTG had no other insurance. Further, the Hartford policy applied only to the limited circumstances of damages arising from copyright infringement in TTG's advertisements. The Complaint and Amended Complaint in this action did not allege any copyright infringement in TTG's advertisements, but rather sought to impose liability and damages due to TTG's sale of foreign editions of textbooks in the United States, in violation of the copyright laws.

It was my opinion that if the coverage dispute with Hartford were litigated that TTG would have substantial difficulty in proving Hartford owed any duty to indemnify it. Furthermore, such litigation would have been complex and costly and not

economically feasible due to the maximum potential recovery of $76,000. It was therefore decided to negotiate a settlement of Hartford's indemnity obligation to achieve the best result possible under the circumstances.

In such negotiations where an insurer's duty to indemnify is questionable, it is preferable to secure an agreement from the insurer that it owes a duty to defend, as the insurer will be more likely to agree to contribute a greater amount to any settlement, to avoid incurring additional defense costs. This was accomplished in this matter by offering to Hartford facts outside of the Complaint, to establish that TTG would have substantial grounds to secure a full defense from Hartford in this action as a matter of law.

The duty to defend is separate and distinct from the duty to indemnify and requires the insurer to either secure counsel for its insured or to pay for counsel chosen by the insured. Hartford acknowledged this duty to defend and paid for the services of Amigone, Sanchez in defending TTG in this action. In addition, Hartford agreed to indemnify TTG for half of the settlement and judgment in this action.

The proceeds of the settlement of the Hartford indemnity obligation, $38,000, were received by the undersigned and

deposited in my firm's Client Trust Account. Those funds remained on deposit, without withdrawal, until payment was issued to attorney Dunnegan, in the amount of $38,000. The payment was issued after authorization to the undersigned by TTG to release these funds to attorney Dunnegan.

Due to the undersigned's efforts to secure the only funds available to TTG to pay the remainder of the judgment owed in this action, and the undersigned's agreement with TTG that a legal fee of $5,000 would be payable from these funds, I believe that it was proper to claim a legal fee.

This legal fee was disclosed and discussed with attorney Dunnegan and he objected to any legal fee taken from the proceeds. Furthermore, I was advised by TTG that it was contemplating seeking bankruptcy protection, and I received a Restraining Notice from attorney Dunnegan subsequent to depositing the funds received from Hartford in the Client Trust Account. For these reasons, I refrained from withdrawing any funds from the Client Trust Account for a legal fee in this matter. The entire $38,000 remained on deposit in my Client Trust Account until the check was issued to attorney Dunnegan.

Contrary to attorney Dunnegan's assertions, the entire amount of these funds has remained available for payment of the

5

judgment on behalf of TTG and in fact these funds have been paid on behalf of TTG to satisfy the Judgment in this action.

The settlement of the insurance dispute with Hartford included Hartford's agreement to pay in full the legal fees of Amigone, Sanchez to defend TTG in this action. Hartford's letter to the undersigned and the check it issued in the amount of $35,000 both state that the payment was made for legal expenses. Hartford inquired of the undersigned whether those legal expenses had already been paid by TTG. I advised Hartford that the expenses had not been paid and it was my understanding that Hartford would prepare a check payable directly to Amigone, Sanchez to pay for the legal fees incurred.

After telephone conversations between Hartford and attorney Dunnegan as well as correspondence from attorney Dunnegan to Hartford, the check forwarded from Hartford in the amount of $35,000 payable for legal expenses was to TTG and the undersigned, as attorney.

Based upon my negotiations with Hartford, the terms of the settlement of the insurance dispute, and the nature of the duty to defend being a separate and distinct obligation under the Hartford Insurance Policy, these funds were paid to Amigone, Sanchez. This was consistent with the terms of the settlement of

6

the insurance dispute, the understanding of Hartford and TTG and the law regarding the duty to defend.

At no time did I seek to induce TTG or Mathew Stirling to violate this Court's final Judgment. Rather, I preserved all of the funds paid by Hartford for purposes of indemnifying TTG for amounts owed under the Judgment in this action, even those amounts constituting my fee, and properly directed amounts paid by Hartford for legal expenses to Amigone, Sanchez, as TTG had not paid those expenses and was therefore not entitled to reimbursement.

## POINT I

### HARTFORD OWED A DUTY TO PAY THE LEGAL FEES OF AMIGONE, SANCHEZ TO DEFEND TTG

In <u>Automobile Insurance Company v. Cook</u>, 7 N.Y.3d 131 (2006), the New York Court of Appeals held that it is well settled that an insurance company's duty to defend is broader than its duty to indemnify and that indeed, the duty to defend is exceedingly broad and an insurer will be called upon to provide a defense wherever the allegations of the Complaint suggest a reasonable possibility of coverage. The Court noted:

> For this reason, when a policy represents that it will provide the insured with a defense, we have said that it actually constitutes "litigation insurance" in addition to liability coverage. . . Thus, an insurer may be required to defend under the contract even though it may not be required to pay once the litigation has run its course.

See also, <u>Town of Massena v. Hospital Underwriters Mutual Insurance Company</u>, 98 N.Y.2d 435 (2002).

In <u>Servidone Construction Corp. v. Security Insurance Company</u>, 64 N.Y.2d 419 (1985), the Court noted that the insured's right to representation and the insurer's correlative duty to

8

defend suits, however groundless, false or fraudulent, are in a sense litigation expenses expressly provided by the insurance contract. The Court also stated that:

> The duty to indemnify is, however, distinctly different. The duty to defend is measured against the allegations of the pleadings but the duty to pay is determined by the actual basis for the insured's liability to a third person.

Where there are covered and uncovered claims asserted, an insured is entitled to a defense by an attorney of his own choosing, whose reasonable fee is to be paid by the insurer. Public Service Mutual Insurance Co. v. Goldfarb, 53 N.Y.2d 392 (1981). The New York Court of Appeals has always been clear that the insured selected attorney must be paid for by the insurer where a duty to defend exists. Hartford Accident & Indemnity Co. v. Village of Hempstead, 48 N.Y.2d 218 (1979).

Based upon the foregoing, Hartford was obligated to pay the legal fees of Amigone, Sanchez consistent with its duty to defend under the policy. In fact, Hartford fulfilled this duty by issuing a check in the amount of $35,000, as payment of the full amount of the Amigone, Sanchez legal bill.

In good faith and reliance upon Hartford's duty to defend and New York case law requiring an insured to pay for the legal fees, the funds forwarded by Hartford were properly directed to Amigone, Sanchez.  Since TTG did not already pay the legal bill of Amigone, Sanchez, it would not have been entitled to reimbursement from Hartford.  Rather, pursuant to the foregoing case law, Hartford had a direct obligation to pay Amigone, Sanchez's legal bill in the defense of TTG in this action.

Therefore, there has been no act of the undersigned that constitutes contempt of this Court's Judgment. Nor has there been any act on my part that constitutes any inducement of TTG or Matthew Stirling to avoid payment of this Court's Judgment.  To the contrary, consistent with New York law, the undersigned properly directed the funds to the party to whom Hartford owed the obligation to pay defense costs.

Just as Hartford was obligated by the insurance settlement to pay on behalf of TTG a portion of the Judgment in this matter, Hartford was similarly obligated to pay on behalf of TTG the legal bill of Amigone, Sanchez consistent with its duty to defend under the policy.

**POINT II**

**GALBO & ASSOCIATES IS ENTITLED TO A RETAINING LIEN
ON THE PROCEEDS OF THE SETTLEMENT OBTAINED FROM HARTFORD
ON BEHALF OF TTG**

Galbo & Associates had a proper retaining lien on the settlement proceeds received from Hartford and was entitled to deduct its fee of $5,000 from those proceeds.  Plaintiffs sought to interfere with this retaining lien by communicating with Hartford directly after the settlement between TTG and Hartford was consummated, by objecting to the taking of the fee by the undersigned and by serving a Restraining Notice upon the undersigned.

The New York Court of Appeals has recognized a common law retaining lien, also known as a general possessory lien, entitling an attorney to retain all papers, securities or money belonging to the client, that come into the attorney's possession in the course of representation, as security for payment of the attorney's fee.  <u>Hoke v. Ortiz</u>, 82 N.Y.2d 323 (1994).  In <u>Hoke</u>, the Department of Social Services sought to interfere with the settlement of an insurance claim by asserting a lien, contacting the carrier and causing its name to be added to an insurance settlement check inappropriately.  The Court noted due to the Department of Social Services' mistake and advice to Allstate, the fees would have actually been paid over to the law firm, as

11

the client directed, and the firm would have been paid out of the settlement proceeds.

On this basis, Galbo & Associates was entitled to a legal fee payable from the proceeds it recovered on behalf of TTG from Hartford regarding Hartford's obligation to indemnify TTG for the judgment in this action and held a valid retaining lien.  As such, the undersigned did not aide and abet TTG or Matthew Stirling in violation of any order of this Court, nor have I committed any conduct justifying violation of civil contempt regarding my assertion of a legal fee on the settlement proceeds.

In fact, rather than pursuing my rights to this legal fee, the entire amount of the funds held in the Client Trust Account has been paid to the Plaintiffs in this matter.  This is due in large measure to the spurious and meritless allegations of contempt made by the Plaintiffs in this action.

CONCLUSION

For the reasons set forth above and based upon the facts stated in the Declaration of Richard A. Galbo, Esq. and the exhibits attached thereto, I respectfully request that the Court deny Plaintiffs' motion for contempt against the undersigned in all respects.

Dated:  Buffalo, New York
        July 1, 2008

Respectfully submitted,

_____
Richard A. Galbo, Esq.
**GALBO & ASSOCIATES**
Attorneys for The Textbook Guy, LLC
420 Main Street
1830 Liberty Building
Buffalo, New York 14202
(716) 332-0151